Richard A. COPPLE, Plaintiff,

v.

CITY OF CONCORDIA, KANSAS, and Tom Fisher, Defendants.

Civ. A. No. 90–1561–FGT.

United States District Court, D. Kansas.

Feb. 3, 1993.

Jim Lawing, Wichita, for plaintiff.

K. Gary Sebelius, Catherine A. Walter, Davis, Wright, Unrein, Hummer & McCallister, Topeka, KS, David E. Retter, Vernon, Retter & Long, Concordia, KS, for defendants.

## MEMORANDUM AND ORDER

THEIS, Senior District Judge.

This matter is before the court on defendants' motion for summary judgment, Doc. 26. Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that his termination from employment with the City of Concordia, Kansas violated his due process rights. The parties' requests for oral argument are denied. D.Kan. Rule 206(d).

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of

factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim. Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2552 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials contained in the nonmoving party's pleadings, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

■ At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge when ruling on a motion for summary judgment. The evidence of the nonmoving party is to be believed. All justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 255, 106 S.Ct. at 2513.

The following facts are uncontroverted for the purposes of this motion.

1. Plaintiff commenced his employment with the City of Concordia on July 21, 1980.

2. Plaintiff was hired by the City as a shop foreman and held that position through December 20, 1989.

3. Defendant Tom Fisher is the Director of Streets for the City of Concordia and was plaintiff's immediate supervisor at the time of plaintiff's termination from employment.

4. On March 16, 1983, the City of Concordia adopted its "Employee's Handbook of Personnel Policies and Regulations," which was incorporated by reference by Ordinance No. 2334 and became effective March 17, 1983.

5. Plaintiff received a copy of the City of Concordia's Personnel Policies and Regulations Handbook on or about March 18, 1983.

6. Section 7.4 of the City's personnel policies provides that violation of certain rules will result in specified disciplinary action. Section 7.4 *(Major Offenses)* *(1)* identifies discharge as the appropriate discipline for unauthorized use of City property.

7. The City's personnel policies do not contain any provision precluding discipline, including termination, for reasons other than those specified. In other words, the City's personnel policies do not state that discipline, including termination, is limited to the situations expressed therein or limited to good cause.

8. Plaintiff has been a member of American Bikers Aimed Toward Education ("ABATE") for approximately seven years and served as president of ABATE of Kansas from November 1989 through August 1990.

9. Prior to serving as president of ABATE, plaintiff held the following positions with ABATE during the time he was employed by the City of Concordia: vice-president (commencing in November 1987), district representative, and county representative.

10. On April 25, 1988, defendant Tom Fisher held a meeting with the plaintiff. Notes prepared by Fisher reflect that he advised, among other things, that plaintiff "needed to take care of his personal business on off-duty hours." Plaintiff has not specifically controverted that Fisher made this comment to him. However, in his affidavit, plaintiff states that Fisher's main point was to make sure that certain motorcyclist friends of plaintiff did not come to the shop. It does not appear that plaintiff was advised to refrain from making personal long distance phone calls from the office.

11. Plaintiff testified that it was his understanding that personal long distance phone calls could be made from his office but that reimbursement to the City was required.

12. Plaintiff also understood that disciplinary action would be appropriate if employees made long distance phone calls, knew they owed money to the City, and did not reimburse the City for the phone calls.

13. Plaintiff admits that he made some long distance phone calls which were billed to the City and for which he should have reimbursed the City. Plaintiff does not controvert this statement of fact, but adds that he was unaware that the City was being billed for his telephone calls which he thought were being charged to either his ABATE credit card or his personal credit card. *See* Plaintiff's Affidavit at pp. 1–3.

14. In late January 1987, plaintiff had been requested to reimburse the City for a personal long distance phone call in the amount of 99 cents.

15. On another occasion, plaintiff noticed a phone bill lying on Fisher's desk and reimbursed the City for personal long distance phone calls in an amount of two or three dollars.

16. In November or December 1989 (shortly before plaintiff was terminated),

Fisher cautioned plaintiff about spending time on the phone. Plaintiff acknowledges that Fisher commented about the time he (plaintiff) had been spending on the phone; however, plaintiff considered this to be only a passing comment.

17. On December 20, 1989, at approximately 4:00 p.m., Fisher had a meeting with plaintiff in plaintiff's office.

18. Fisher advised plaintiff that the City had discovered a number of long distance telephone calls being made from the shop phone and advised plaintiff that the City believed plaintiff had made those unauthorized phone calls.

19. At the same time, Fisher provided plaintiff with a list of phone calls which the City believed plaintiff had made.

20. The total cost to the City for the listed unauthorized phone calls was $354.36.

21. In response to Fisher's information, plaintiff indicated that he may have made some of the phone calls listed but that he would have been using his long distance calling card.

22. As plaintiff reviewed the list of phone calls, he placed an "X" by some of the phone numbers and persons, indicating that he did not believe he knew those persons.

23. Although plaintiff initially indicated that he did not recognize the phone number for or name of C.J. Stewart (to which 40 telephone calls were made from plaintiff's office phone), C.J. Stewart is known to plaintiff as "Mom" and her number is contained within the small telephone book carried by plaintiff.

24. Plaintiff admits that he probably made most of the calls to Stewart which appeared on the list and that they would have had nothing to do with City of Concordia business.

25. Although plaintiff indicated initially that he was not familiar with Vidrickson Catering, plaintiff recalled that he did make a phone call to Jeff Vidrickson at Vidrickson Catering concerning a fund raising event by ABATE on behalf of the Capper Foundation in Salina, Kansas.

26. Although plaintiff initially indicated that he did not recognize the phone number for a Craig and Ann Warner, their number does appear in plaintiff's personal telephone book and a phone call to them would not have had anything to do with City of Concordia business.

27. Although plaintiff initially indicated that he did not recognize the name Clel Combs or that phone number on the list, he later realized the number to be that of the father of a friend. He may have called that number, and the call would have had nothing to do with City of Concordia business.

28. Although plaintiff initially indicated that he was not familiar with the phone number for A-1 Tattooing, that number is listed within his personal telephone book under "Tat for Jon" and a call to that business would not have had anything to do with City of Concordia business.

29. In addition, plaintiff admits that he may have made phone calls to the following persons or businesses which appear on the list shown to him by Fisher, which calls would have had nothing to do with City of Concordia business: (a) telephone calls to attorney Vern Miller; (b) telephone calls to Greg Hardy, a personal friend of the plaintiff; (c) plaintiff admits knowing S. Ames and any calls to her would have had nothing to do with City of Concordia business; (d) most of the calls to the Harley–Davidson shop, none of which would have been connected with City of Concordia business; (e) a call to ABATE of Kansas which would have had nothing to do with City of Concordia business; and (f) plaintiff admitted that he could have made the calls to an unlisted number shown on page 6 of the listing of phone calls, Ex. 5.

30. Plaintiff has no evidence that Fisher was acting other than in good faith in claiming that the phone calls were unauthorized.

31. On December 21, 1989, the City Manager approved Fisher's recommendation to terminate the plaintiff.

32. Approval by the City Manager is required before a termination decision is effective.

33. Plaintiff received a memorandum notifying him of his termination on December 21, 1989.

34. The December 21 memorandum stated that the reason for plaintiff's dismissal from employment was: "Theft of services by placing unauthorized personal long distance phone calls from the shop office phone."

35. The personnel policies and regulations of the City of Concordia provide that an employee may be discharged for "unauthorized use of City property."

36. Fisher personally handed the termination letter to plaintiff and indicated to plaintiff that grievance procedures were available to him.

37. Plaintiff did not request a grievance hearing in accordance with the City's procedures at any time subsequent to his termination from employment.

38. On or about January 2, 1990, plaintiff had a meeting with Richard Nienstedt, City Manager, and Verna Ferguson, City Clerk, at plaintiff's request.

39. Plaintiff called the meeting in an attempt to get his job back, or in the alternative, to obtain certain concessions such as having his employment file changed to reflect that plaintiff quit and was not fired.

40. During this meeting, City Manager Richard Nienstedt suggested that plaintiff utilize the grievance proceedings and assured the plaintiff that he could file a grievance even though the time for doing so had expired.

41. Plaintiff never requested any documents concerning his discharge from employment.

42. On December 21, 1989, plaintiff told a coworker, Pete Beaumont, that he had been terminated for making long distance phone calls at work.

43. Plaintiff knows of no person other than Pete Beaumont to whom the reason for plaintiff's termination was disseminated.

44. Plaintiff was told by a prospective employer (Kelly Wild of Wild Man Motors) that plaintiff's former supervisor would not

disclose the circumstances surrounding plaintiff's termination from employment.

45. Plaintiff is unaware as to whether any other prospective employers knew that his employment with the City had terminated.

46. In addition to plaintiff's personal long distance phone calls which were paid for by the City, other phone records have been produced by plaintiff during the course of discovery concerning plaintiff's long distance telephone call usage: (a) phone records of ABATE, which include calls made by the plaintiff from the shop office as well as calls placed to the shop office phone from other persons using an ABATE calling card; and (b) phone records for plaintiff's home telephone, which reflect long distance telephone calls made by the plaintiff from the shop office phone and charged to his home telephone number.

47. Plaintiff admits that phone calls made from the City of Concordia shop office phone using either his ABATE phone calling card or his personal phone calling card would not have had anything to do with City of Concordia business.

48. During the period January 11, 1989 through July 24, 1989, 270 long distance phone calls were made from the shop office phone in plaintiff's office and charged to his ABATE calling card.

49. During the period December 14, 1988 through July 20, 1989, 75 long distance phone calls from others were placed to the shop office phone in plaintiff's office and charged to the ABATE calling card. These calls ranged from 1 to 39 minutes.

50. For the period March 21, 1988 through September 19, 1989, 123 long distance phone calls were made from the shop office phone in plaintiff's office and charged to his home telephone. These calls ranged from 1 to 32 minutes. The court notes here that the plaintiff disputes the relevance of these last five paragraphs of fact.

*Discussion*

■ The protections of procedural due process under the fourteenth amendment apply only to one who is deprived of an established property or liberty interest. *Board of*

*Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Accordingly, the court must first determine whether the plaintiff had a property interest in continued employment or whether a liberty interest was implicated by his termination.

■ Property interests are not created by the Constitution. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Rather, they are created and defined by independent sources such as state statute, municipal ordinance, or an express or implied contract. *Carnes v. Parker,* 922 F.2d 1506, 1509 (10th Cir.1991). A public employee has a property interest in continued employment if, under state law, that employee has a legitimate claim of entitlement to continued employment. *Id.* at 1510; *see Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. When an employee bases a claim of entitlement to continued employment on an employment contract, the court must look to state contract law to determine whether there is a legitimate claim to continued employment under that contract. *Carnes v. Parker,* 922 F.2d at 1510. This court must determine whether the Kansas Supreme Court would recognize a property interest under the facts of this case. *Harris v. Board of Public Utilities,* 757 F.Supp. 1185, 1190 (D.Kan.1991).

■ Kansas follows the rule that, in the absence of an express or implied contract covering the duration of employment, the employment is terminable at the will of either party. *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54, 551 P.2d 779 (1976). An at will employee has no property interest in employment. *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). Kansas law does recognize implied-in-fact employment contracts as an exception to the employment at will doctrine. *Morriss v. Coleman Co.,* 241 Kan. 501, 513–14, 738 P.2d 841 (1987). Whether there is an implied contract of employment requires a factual inquiry. *Id.* at 512, 738 P.2d 841; *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 141, 815 P.2d 72 (1991) (whether an implied contract of employment exists is a question of fact). An implied contract for a definite term or for continued employment absent good cause for termination will give rise to a prop-

erty interest under Kansas law. *Elam v. Williams*, 753 F.Supp. 1530, 1537 (D.Kan. 1990), *aff'd without published op.*, 953 F.2d 1391 (10th Cir.1992); *see also Conaway v. Smith*, 853 F.2d at 793–94.

Plaintiff bases his claim of a property interest on the City's personnel policies and regulations, which have been enacted into law as a City ordinance. While plaintiff does not specifically argue that he had an implied-in-fact employment contract, he does argue that the personnel policies contained in the City ordinance demonstrate that he could be terminated only for cause. Plaintiff refers to several provisions of the City's personnel policies in support of his argument. The stated purpose of the City's personnel policies and regulations is to "define the terms, conditions, rights and requirements of employment for City employees." Personnel Policies and Regulations, § 1.1. Section 1.2 lists various objectives of the personnel policies and regulations. Included in the objectives are "retention on the basis of skill, ability, knowledge and job performance" and "fair treatment in all aspects of personnel administration without regard to race, color, sex, ancestry, national origin, religion, age or physical handicaps and with proper regard for privacy and constitutional rights." Section 7.4 sets forth 13 "minor" offenses and 12 "major" offenses which will result in specified disciplinary actions. Paragraph 8.3 provides that "Any employee may be dismissed for cause. See Section 7.4 for possible causes." Section 4.16 provides that any employee terminated for cause is not eligible for re-employment with the City. Section 4.14 governs probation for new employees. A new employee is placed on a six month probation, "during which a new employee is on trial, with permanent appointment pending satisfactory performance evaluation." Plaintiff concludes that a property interest is well established by the facts in this case.

Plaintiff argues that the provisions of the personnel policies discussed above show that he could be terminated only for cause. The court disagrees. The personnel regulations do not explicitly grant tenure or guarantee continued employment absent cause for termination. The personnel regulations do not limit the broad discretion an employer has under Kansas law to terminate employees. While section 7.4 of the regulations specifies various grounds for termination, the regulations do not expressly state that termination is only allowed for cause. Rather, the causes listed in section 7.4 are merely "possible causes" for termination. *See* section 8.3(a). Section 7.1, on responsibilities for disciplinary action, provides that "A disciplinary action is a procedure designated to punish, or correct the actions of, an employee for a violation of the personnel regulations, departmental rules or accepted work behavior." This section makes clear that disciplinary action is contemplated for behavior which is not specified in the list of causes for disciplinary action contained in section 7.4. The court cannot imply a contractual right promising continued employment from a list of grounds for discipline and termination. *Harris v. Board of Public Utilities*, 757 F.Supp. 1185, 1190–91 (D.Kan.1991); *see also Carnes v. Parker*, 922 F.2d 1506, 1511 (10th Cir.1991) (applying Oklahoma law).

Plaintiff relies solely on the personnel policies enacted by the City of Concordia to support a property right in continued employment. There are a number of other factors which a court may consider in determining whether an implied employment contract exists. *See Morriss v. Coleman Co.*, 241 Kan. 501, 513, 738 P.2d 841 (1987). However, it is plaintiff's burden to demonstrate a genuine issue of material fact as to the existence of an implied employment contract. Plaintiff has not done so. Accordingly, the court shall not consider whether any other facts exist to support a finding of an implied employment contract.

Further, under Kansas law, personnel rules which are not bargained for cannot alone be the basis for an express or implied contract of employment, since they are merely the unilateral expression of the employer's policy. *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988); *Groh v. City of Lenexa*, 1991 WL 79662, 1991 U.S. Dist. LEXIS 6074 (D.Kan.1991) (citing *Riddle v. City of Ottawa*, 12 Kan.App.2d 714, 754 P.2d 465, *review denied*, 243 Kan. 780 (1988)); *Rouse v. Peoples Natural Gas Co.*, 605

F.Supp. 230, 232 (D.Kan.1985). If the personnel rules and policies do not form an express or implied contract of employment, the fact that they have been enacted into ordinance does not transform them into an employment contract. *Groh v. City of Lenexa,* 1991 WL 79662, 1991 U.S. Dist. LEXIS 6074 (D.Kan.1991). Plaintiff has not shown that the personnel policies contained in the City ordinance were bargained for. The uncontroverted facts demonstrate that the personnel policies were adopted several years after plaintiff began working for the City of Concordia. The unilateral expression of City policy contained in the personnel rules does not alone form the basis for an express or implied employment contract. Such a unilateral expression may, however, be one of the relevant circumstances from which an implied employment contract may be inferred. *Rouse,* 605 F.Supp. at 232. Plaintiff has come forward with no other facts from which the court could imply an employment contract.

The court concludes that plaintiff was an at will employee and had no constitutionally protected property interest in continued employment with the City of Concordia.

Assuming, however, that plaintiff could demonstrate a genuine issue of material fact regarding the existence of a property interest, the court shall next address his claim of denial of procedural due process. This due process requirement includes three elements: (1) an impartial tribunal; (2) notice of charges given a reasonable time before the hearing; and (3) a pretermination hearing except in emergency situations. *Patrick v. Miller,* 953 F.2d 1240, 1244 (10th Cir.1992). Plaintiff contends that he was not afforded the required pretermination hearing. Plaintiff appears to argue that the brief meeting he had with defendant Fisher on December 20, 1989 did not meet the due process requirements of a pretermination hearing. Plaintiff alleges that Fisher did not give plaintiff an opportunity to defend himself against the theft charges and did not afford him sufficient time to make a reasonable response to the list of telephone calls. According to the Final Pretrial Order, plaintiff raises the issue of whether, at the pretermin-

ation stage, there must be a delay between the "notice" and the "opportunity to respond" accorded to an employee. Doc. 47, p. 3. This appears to be the same general argument raised by the plaintiff in his response brief.

■■■■ To satisfy due process, an employee must be provided with a pretermination hearing in which the employee must be given "notice of the termination decision and an opportunity to respond." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The pretermination hearing need not be elaborate, nor need it "definitively resolve the propriety of discharge." *Id.* at 545, 105 S.Ct. at 1495. The purpose of the pretermination hearing is to serve as "an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. at 1495. The employee is to be given oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *Id.* at 546, 105 S.Ct. at 1495.

In *Powell v. Mikulecky,* 891 F.2d 1454 (10th Cir.1989), the Tenth Circuit discussed the requirements of the pretermination hearing:

> The pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted. The pretermination hearing is intended to supplement, not duplicate, the more elaborate post-termination hearing. Because the post-termination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point. To duplicate those protections at the pretermination stage would cause unnecessary delay and expense while diffusing the responsibility for the ultimate decision to terminate an employee. The ideas of conducting two identical hearings runs counter to traditional principles of adjudication.

*Id.* at 1458.

■■■■ Applying these principles to the facts of this case, the court concludes that

plaintiff was not denied procedural due process. During the meeting with defendant Fisher on December 20, 1989, plaintiff was given oral notice of the charge against him, i.e., that plaintiff had made unauthorized long distance calls. Plaintiff was provided with documentation of the employer's evidence against him, i.e., the written summary of the long distance calls made from the shop phone. Fisher advised plaintiff that the City believed plaintiff had made those calls. Plaintiff was given the opportunity to look at the list of phone numbers. Plaintiff was given the opportunity to present his side of the story at that time. Plaintiff indicated that he may have made some of the phone calls listed, but that he would have used his calling card. Plaintiff reviewed the list of phone numbers and noted on the list those numbers he did not immediately recognize. The uncontroverted facts demonstrate that plaintiff was given notice of the charges against him, a summary of the City's evidence, and the opportunity to respond.

 Due process does not require that the employee be given advance notice of the purpose of the meeting. The Tenth Circuit stated in *Powell v. Mikulecky:*

> Nothing in *Loudermill* suggests, nor do we hold, that a public employee is entitled to some type of "pre-notification notice" of the charges against her or him. Likewise, *Loudermill* does not imply that, in conducting the pretermination hearing, there must be a delay between the "notice" and the "opportunity to respond" accorded to the public employee.

891 F.2d at 1459. *See also Derstein v. State of Kansas*, 915 F.2d 1410, 1413 (10th Cir. 1990) (fact that employee did not know in advance that he had been subject of internal investigation is not significant), *cert. denied,* —— U.S. ——, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991).

 Next, the plaintiff appears to take issue with the opportunity to respond that he received. Plaintiff appears concerned with what type of evidence he was required to present at the pretermination stage in order to avoid termination. Plaintiff appears to argue that during that brief meeting at which he was initially confronted with the charges, he was required to present compelling evidence to persuade the City that its reasons were incorrect. Plaintiff misapprehends the nature of the pretermination hearing required by due process. A full evidentiary hearing is not required prior to the adverse employment action. *West v. Grand County,* 967 F.2d 362, 367 (10th Cir.1992). "A pretermination hearing was never intended to be an adjudicative detailed proceeding." *Derstein,* 915 F.2d at 1413. Rather, it merely serves as "an initial check against mistaken decisions." *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495. At the pretermination hearing stage, the employee need not be successful in convincing the employer that termination is unwarranted. The hearing need not "definitively resolve the propriety of discharge." *Id.* Plaintiff did have the opportunity to respond and did respond with his position as to why the City was mistaken, i.e., that he would have used his calling card for any long distance calls he made.

Plaintiff does not discuss the post-termination grievance proceedings which were available to him and which he did not utilize. The City has a grievance procedure outlined in Part 9 of the personnel policies. The grievance procedure provides the following steps: (1) oral grievance to the lowest level supervisor with authority to remedy the grievance; (2) written grievance to the department head; (3) appeal of the decision to the Grievance Committee; and (4) appeal to and hearing before the City Manager from less than unanimous decisions of the Grievance Committee. Doc. 27, Ex. 13. Plaintiff does not argue that the post-termination grievance proceedings were unavailable to him. Plaintiff makes no claim that the post-termination procedures were insufficient to satisfy the requirements of due process.

 Plaintiff received a copy of the personnel regulations on March 18, 1983. Doc. 27, Ex. 4. The written memorandum from Fisher dated December 21, 1989 informed plaintiff of the reason for plaintiff's termination and informed him of his right to a grievance hearing pursuant to the personnel regulations. Doc. 27, Ex. 6. The uncontroverted facts further indicate that in a meeting held on or about January 2, 1990, the

City Manager recommended that plaintiff file a grievance and assured plaintiff that the five day time limit would not be a bar. Plaintiff did not file a grievance. By knowingly failing to take advantage of the post-termination procedures available to him, he has waived his right to challenge them in this action. *See Pitts v. Board of Education,* 869 F.2d 555, 557 (10th Cir.1989).

■ Plaintiff also asserts that a liberty interest is at stake in the present case. Plaintiff cites *Conaway v. Smith,* 853 F.2d 789 (10th Cir.1988) for the following three propositions: (1) the plaintiff must show some stigmatization in connection with his firing; (2) the plaintiff must show the stigma arose from substantially false characterizations; (3) the plaintiff must show that the damaging characterizations were made public through channels other than the instant litigation. In *Conaway v. Smith,* the Tenth Circuit stated:

"The concept of liberty recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor, and integrity, and 2) his freedom to take advantage of other employment opportunities." *Miller v. City of Mission, Kan.,* 705 F.2d 368 (10th Cir. 1983); *Weathers v. West Yuma County School Dist. R–J–1,* 530 F.2d 1335, 1338 (10th Cir.1976). For an employee to make a successful liberty deprivation claim, in addition to proving one of the above-recognized interests, he must also show that his dismissal resulted in the publication of information which was false *and* stigmatizing. *Sipes v. United States,* 744 F.2d [1418,] at 1421 [ (10th Cir.1984) ].

853 F.2d at 794 (emphasis in original). More recently, the Tenth Circuit has summarized the holdings of the United States Supreme Court regarding the constitutional guarantees of liberty in the context of public employment:

In succeeding cases, the Court brought *Roth* [*Board of Regents v. Roth,* 408 U.S. 564[, 92 S.Ct. 2701, 33 L.Ed.2d 548] (1972) ] into sharper focus. First, in *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976), the court stated *Roth* did not hold that defamation of a public employee alone is enough to violate a protected liberty interest. Additionally, the Court explained, to be actionable, the defamation must occur in the course of the termination of employment. *Id.* Second, the stigmatizing statement must be disclosed publicly. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Third, the stigmatizing statement must be false. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). Indeed, "there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation." *Id.* at 627, 97 S.Ct. at 884.

*Melton v. City of Oklahoma City,* 928 F.2d 920, 926 (10th Cir.) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991).

■ Plaintiff's alleged liberty interest claim fails for two reasons: first, the allegedly stigmatizing statement (that plaintiff was terminated for theft of services) was not disclosed publicly and second, the statement was not false. As the uncontroverted facts show, plaintiff himself disclosed the reason for his termination to a coworker. On December 21, 1989, plaintiff told coworker Pete Beaumont that he had been terminated for making long distance phone calls at work. No liberty interest is impinged when the plaintiff discloses the circumstances of his termination. *Derstein v. State of Kansas,* 915 F.2d 1410, 1414 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991). The allegedly stigmatizing information must be made public by the offending governmental entity. *Id.* Plaintiff knows of no person other than Pete Beaumont to whom the reason for plaintiff's termination was disseminated. Plaintiff was told by a prospective employer that plaintiff's former supervisor would not disclose the circumstances surrounding plaintiff's termination from employment. Plaintiff is unaware as to whether any other prospective employers knew that his employment with the City had terminated. Plaintiff has come forward with no evidence to indicate that the reason for plaintiff's termination was disclosed to anyone by the defendants.

Further, the allegedly stigmatizing statement was not false. Plaintiff has admitted that he made most, if not all, of the long distance telephone calls which appear on the list prepared by Fisher. The Tenth Circuit noted in *Melton* that there is no rule that truth is a complete defense to every liberty interest claim. 928 F.2d at 929. However, since there is no evidence of duplicity behind the truthful statement, there can be no liability. *Id.*

In response to the defendants' arguments, plaintiff has responded that City officials caused the County Attorney to bring criminal charges against plaintiff. Plaintiff has further asserted that these actions meet the criteria of publication, stigmatization, and false characterization. Plaintiff has attached a summons in a criminal case from the Cloud County District Court. The summons, which has no date apparent on the copy, recites charges of official misconduct in violation of K.S.A. 21–3902 and theft of services in violation of K.S.A. 21–3704, both Class A misdemeanors. The charges were apparently filed in January 1990. There is no documentation reflecting the outcome of these charges. There is no indication of when these charges were filed. There is no evidence before the court to support plaintiff's allegation that the City "caused" the charges to be brought.

As noted above, to be actionable, the defamation must occur in the course of the termination of employment. There is nothing before the court to indicate that any City official made the allegedly defamatory statements in the course of plaintiff's termination from employment. The charges were not brought until sometime after plaintiff's termination. Also as noted above, the stigmatizing statement must be disclosed publicly. There is nothing before the court to indicate that the allegedly defamatory statements were disclosed publicly. Third, the stigmatizing statement must be false. The court has previously found that the allegedly stigmatizing statement was not false. Plaintiff asserts in his brief that the charges were dismissed. Even if true, this fact is not material. This court could speculate as to any number of reasons why the County Attorney might decline to prosecute such mis-

demeanor charges. The fact remains that plaintiff did make unauthorized long distance calls, although he may have been mistaken as to how the calls were being billed. The prosecutor's decision not to pursue the charges does not change the truth of the allegation of theft of City services.

Plaintiff has not shown a genuine issue as to any material fact regarding the filing of criminal charges. It is his burden to come forth with evidentiary matters showing a genuine issue of fact for trial. The court concludes that plaintiff is unable to demonstrate an issue of fact regarding the violation of a liberty interest. Given this resolution, the court need not discuss the defendants' remaining arguments.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment (Doc. 26) is hereby granted.