**Steven DEHART, Plaintiff,**

v.

**CITY OF MANHATTAN, KANSAS, Defendant.**

**No. 95–4154–RDR.**

United States District Court, D. Kansas.

Oct. 7, 1996.

Gary F. Conklin, Westmoreland, KS, Stephen W. Cavanaugh, Thomas G. Lemon, Fisher, Cavanaugh & Smith, P.A., Topeka, KS, for plaintiff.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action brought by the plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff contends that his substantive and procedural due process rights were violated when he was terminated from his position as plant operator of the City of Manhattan's (City) waste water treatment plant. He also asserts a state law breach of contract claim. This matter is presently before the court upon defendant's motion for summary judgment.[1]

---

1. The court originally scheduled oral argument on this motion, but, upon further reflection, has

## I.

The claims asserted by the plaintiff in this case revolve solely around whether plaintiff had an implied contract with the City. The focus of the court's opinion shall be upon that issue since plaintiff's claims are contingent upon it.[2]

## II.

Plaintiff was employed by the City as a lab technician on May 10, 1977. He subsequently became plant operator at the City's waste water treatment facility. He held that position until he was terminated on September 14, 1994.

The following facts are pertinent to the issue of whether plaintiff had an implied contract with the City. Upon his employment by the City, plaintiff received an employee handbook. A resolution was passed by the City effective January 1, 1980 establishing policies for governing City employees. The resolution provided that the existing personnel rules shall be the personnel policy of the City. The resolution further provided the following: "City employees shall be suspended or dismissed only for cause specifically stated and any employee so disciplined have rights of appeal as set out in the Personnel Rules hereby adopted."

The City's Personnel Policy Manual and Employee Handbook in effect at the time of plaintiff's termination contained the following under the section entitled "Purpose of Manual":

It is the purpose of this manual to establish and maintain a uniform system of policies and procedures which will be followed by the City of Manhattan, Kansas, in the administration of its personnel program. The policies, procedures and provisions established herein are intended to provide an efficient, equitable and functional system of personnel administration based on merit principles which govern the appointment, promotion, transfer, layoff, dismissal and other related conditions of employment. *The manual and its provisions are designed to serve only as a guide to the City's policy and procedures and not as a contract of employment or warranty of benefits.*

The handbook indicates six types of discipline, including dismissal, that can be imposed for a violation of the rules. Fourteen examples of matters for which discipline can be imposed are listed in the handbook, but the rules also make clear that disciplinary action is not limited to the stated examples. The rules also provide that "[i]n all cases, the individual will receive written notice of the pending action and shall have the right of appeal through the grievance procedure." The handbook contains an elaborate grievance procedure.

The handbook contains the following specific information on dismissal of an employee:

A Department Head may recommend the dismissal of any employee under his/her jurisdiction for continuous unsatisfactory job performance or other cause. Such action shall require that notice of at least ten (10) working days be given, to include a written statement of the reason for the action. Should the Department Head determine that an immediate dismissal of an employee from the service of the City is needed (because of the reasons for the dismissal), he/she may, with the approval of the City Manager, suspend the employee with or without pay for a period of ten (10) workings (sic) days in lieu of notice.

determined that it would not be of material assistance. Accordingly, the court shall proceed to decide the pending motion.

**2.** Plaintiff has acknowledged that he did not have a written contract with the City of Manhattan. Plaintiff has also conceded that his substantive due process claim is dependent upon whether he had a property interest in his job. Case law supports the view that a public employee cannot assert a substantive due process claim unless he has a property interest in continued employment. *See Harris v. Blake,* 798 F.2d 419, 424 (10th Cir.1986), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987); *Brenna v. Southern Colorado State College,* 589 F.2d 475, 476 (10th Cir.1978); *McGhee v. Draper,* 564 F.2d 902, 912 (10th Cir.1977); *Weathers v. West Yuma County School Dist.,* 530 F.2d 1335, 1342 (10th Cir. 1976); *DeFries v. Town of Washington,* 875 F.Supp. 756, 764 (W.D.Okla.1995). Finally, plaintiff has abandoned a procedural due process claim based upon a violation of his liberty interests.

A written statement of the reasons for the dismissal would still be required. A supervisor or division head may in like manner recommend the dismissal of an employee.

A dismissed employee may appeal the dismissal through the procedures established by the grievance procedures.

### III.

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

The factual record must be examined in the light most favorable to the party opposing summary judgment. *Thomas v. IBM,* 48 F.3d 478, 484 (10th Cir.1995). " 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### IV.

The City first contends that plaintiff's due process claims are legally foreclosed under state law. The City next contends that the claims are factually foreclosed by state law. Finally, the City argues that plaintiff received due process in his termination from employment.

Plaintiff argues that the question of whether he had an implied contract with the City is a question of fact to be decided by a jury. He points to the following factors in support of his contention that an implied contract existed: (1) the employee manual which limited termination to cause; (2) the length of his employment with the City; (3) the policy of the City to give grievance hearings and pre-termination and post-termination hearings; (4) his promotions and favorable job evaluations; and (5) his contribution to retirement benefits.

### A.

█ The Fourteenth Amendment prohibits a state from depriving a person of a property interest without due process of law. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985). In the employment context, a property interest is defined as a legitimate expectation in continued employment. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests are not created by the Constitution. *Id.* Rather, they are created and defined by state law. *Id.*

### B.

█ Relying upon *Riddle v. City of Ottawa,* 12 Kan.App.2d 714, 754 P.2d 465 (1988) and *Wiggins v. Housing Authority of Kansas City,* 22 Kan.App.2d 367, 916 P.2d 718 (1996), the City contends that plaintiff does not have a property interest under the Four-

teenth Amendment for the purposes of due process because Kansas law precludes an implied contract with a city that has a city manager form of government. Plaintiff has failed to address this argument in any detail. Rather, plaintiff has simply suggested that the issue of whether he had implied contract with the City is a question of fact. Plaintiff does point to *Johnson v. City of Wichita*, 687 F.Supp. 1501 (D.Kan.1988) as support for his argument that he had implied contract, but as pointed out by the City, the decision in *Johnson* fails to address the argument that Kansas law precludes an implied contract with a city that has a city manager form of government.

*Riddle* has been around for several years and no Kansas court had read it for the proposition that Kansas law precludes an implied contract with a city until the court in *Wiggins*. *Wiggins* was only recently decided and we are not aware of any cases that have discussed its holding. An evaluation of the *Riddle* and *Wiggins* cases is necessary to understand defendant's argument.

In *Riddle*, a police officer employed by the City of Ottawa contended that his procedural due process rights were violated when he was suspended without pay for ten days. He alleged that he had a property interest in his job based upon the City's personnel regulations. The Court of Appeals rejected his argument with the following analysis:

Riddle argues he was a permanent employee who could only be disciplined for cause under the express provisions of the Ottawa Personnel Regulations. He argues that these rules and regulations provide the basis for his legitimate claim of entitlement to continued employment. A copy of these rules and regulations has not been included in the record on appeal and, thus, the issue is not reviewable. In any event, the trial court considered the personnel rules and regulations and made a specific finding that "[a]ny employee may be subject to disciplinary action including demotion, suspension, warning or dismissal for cause." *These rules and regulations are not state law, however, and cannot override the clear provisions of K.S.A. 12–1014 [city manager has power to "appoint and remove all heads of departments, and all subordinate officers and employees of the city"] or Ottawa City Code § 2–204.* We note this same issue was before the federal district court in *Wulf v. City of Wichita*, 644 F.Supp. 1211, 1221–22 (D.Kan.1986), where the court noted:

"Section 2.08.090 of the Code of the City of Wichita provides that the city manager shall remove employees. No language in the ordinance establishes either a duration of employment for city employees or criteria for the removal of such employees. The provisions of the ordinance create no legitimate claim of entitlement to continued employment. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

. . . .

". . . . While the City's personnel policy manual provides the accepted reasons for dismissal of employees, it does not state any limits on the duration of employment. Furthermore, the manual does not give rise to any valid expectation of continued employment because it is the unilateral expression of the City's personnel policies. The Kansas rule remains that an employment manual, that is only a unilateral expression of company policy and is not bargained for, cannot alone be the basis of an employment contract."

754 P.2d at 469–70.

The implication of the aforementioned underlined language is that in cases where K.S.A. 12–1014 applies an employee is foreclosed under Kansas law from asserting a property interest based upon either a written contract or an implied contract. As noted earlier, until *Wiggins,* no court had followed that rule. It appears that in later cases this aspect of *Riddle* was simply ignored.

A later federal case sheds some light on how other courts viewed *Riddle.* In *Farthing v. City of Shawnee,* 39 F.3d 1131 (10th Cir.1994), plaintiff, the fire chief for the City of Shawnee, was terminated from his employment by the city manager. He alleged that his procedural due process rights had been violated when he was not given a post-

termination hearing. He argued that he had a property interest in his employment based upon the city ordinances, the city personnel manual, and statements made to him by city officials. The district court rejected his due process claim, finding that he did not possess a protected property interest in his employment. On appeal, the Tenth Circuit affirmed. The court initially concluded that the city ordinances did not restrict the city manager's power to remove plaintiff only for "cause." *Id.* at 1137. In reaching this decision, the court noted that an examination of *Riddle* supported its interpretation of Kansas law that the city manager was empowered to remove plaintiff without cause. *Id.* at 1137–38. The court, however, did not indicate that *Riddle* stood for the proposition that cities, at least those governed by a city manager, lacked the power to enter into implied contracts with its employees. Rather, the Tenth Circuit went on to consider whether plaintiff had an implied contract with the City of Shawnee. In conducting this analysis, the court considered the provisions of the city personnel manual and the additional testimony offered by the plaintiff. The court noted that the city's personnel manual restricted the city manager's power to remove only for "cause." *Id.* at 1139. Nevertheless, the court stated that under Kansas law this fact alone is insufficient to avoid summary judgment. *Id.* The court found that Kansas law required some additional probative evidence on the defendant's intent in order to survive summary judgment. *Id.* The court concluded that no such additional evidence was present in this case and, accordingly, affirmed the district court's decision. *Id.* at 1140.

The analysis used in *Farthing* has been the typical approach to these types of claims in Kansas, at least until *Wiggins.*[3] There was no indication in *Farthing* that a city in Kansas lacked the power to enter into an implied contract with an employee. There may be several reasons for the failure to accord any weight to this part of the *Riddle* opinion. First, the Court of Appeals made clear that the issue it ultimately chose to decide was not reviewable. The court noted

that the issue was not reviewable, but chose to decide it anyway. These circumstances suggest that the decision was dicta. Second, the court relied upon *Wulf* as support for its decision. The court in *Wulf,* however, did not indicate that a claim of a city employee's that he had property interest in his job was foreclosed by Kansas law. Rather, the court in *Wulf* determined that the plaintiff's claim there was foreclosed by the factual circumstances that existed. Such a decision is far different than the one by reached by the Court of Appeals in *Riddle* and in tune with the decisions of the other courts that considered such claims.

The court in *Wiggins,* however, chose to read *Riddle* broadly. There, plaintiffs, who had been employees of the Housing Authority of Kansas, asserted procedural due process claims after they were terminated from their employment. They alleged that they had a property interest in their positions based upon an implied contract with the Housing Authority. The *Wiggins* court conducted the same analysis as the *Riddle* court and concluded that the Housing Authority had no power to enter into an implied contract with the plaintiffs. The court's analysis was as follows:

It appears to us that *Stoldt [v. City of Toronto,* 234 Kan. 957, 678 P.2d 153 (1984)]* and *Riddle* stand for the proposition that a public employee serves at the will of his or her employer unless that employer is specifically empowered to contract for employment on other terms.

We conclude that the Housing Authority had no specific power to contract for employment for a specified tenure. At the time the enabling legislation creating the Housing Authority was passed, the employment-at-will doctrine was well established in the law of Kansas. Neither the statute nor the resolution creating the Housing Authority show any intent to change the generally accepted rule in this state.

In order for the Housing Authority to have the power to enter into an implied

---

**3.** In a recent case, *Mitchell v. Coffey County,* 903 F.Supp. 1415 (D.Kan.1995), this court followed the same approach as that utilized in *Farthing.*

The issue raised here was not raised in *Mitchell,* so we had no reason to consider the implications of *Riddle* in the context of a county employee.

contract for a specific duration, it would have to be demonstrated that that power is necessary in order to effectuate the power specifically granted. In this case, there is no indication whatsoever that the Housing Authority cannot function and carry out its duties under the employment-at-will doctrine. We are further bound by the proposition that any doubt concerning the existence of a nonspecified power is to be resolved against its existence.

We hold that the Housing Authority had neither the specifically expressed power nor the implied power to enter into an employment contract specifying the tenure of its employees.

It is the position of the appellants that they had an implied agreement concerning their employment tenure and that whether such an agreement existed is a question of fact for the trier of fact. That would ordinarily be an accurate observation; however, in this case the terms of the implied contract are basically irrelevant.

Our conclusion is that the Housing Authority had no power to enter into an implied contract specifying the tenure of employment. The net result of that conclusion is that even if it did enter into such a contract with appellants, that contract was absolutely void and unenforceable, and its terms are basically irrelevant.

916 P.2d at 722.

■ Despite some reservations about the holdings in *Riddle* and *Wiggins*, this court is compelled to follow them. Federal courts are to follow decisions of intermediate state courts, like the Kansas Court of Appeals, which have jurisdiction statewide and which issue decisions binding upon all district courts unless in conflict with a decision of the state's highest court. *Gooding v. Wilson*, 405 U.S. 518, 525 n. 3, 92 S.Ct. 1103, 1107–08 n. 3, 31 L.Ed.2d 408 (1972). Plaintiff has failed to point to any Kansas Supreme Court case that has resolved this issue differently. Moreover, the Supreme Court's decision in *Stoldt* provides some support for the deci-

sions in *Riddle* and *Wiggins*.[4] In accord with *Riddle* and *Wiggins*, we find that the City of Manhattan lacked the power to enter into an implied contract with plaintiff. Accordingly, the court must grant summary judgment to the defendant.

## C.

■ However, even under the analysis applied by the courts prior to *Wiggins*, plaintiff's due process claims cannot survive summary judgment. Recently, in *Mitchell*, this court analyzed the various cases in order to determine the evidence necessary to establish an implied contract in Kansas. We examined the law there as follows:

Kansas law provides that an implied contract is an exception to the general rule that public employees have no property or vested interest in public employment. An implied obligation exists "on the part of the employer not to terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will." *Berry v. General Motors Corp.*, 838 F.Supp. 1479, 1491 (D.Kan.1993) (quoting *Morriss v. Coleman Co.*, 241 Kan. 501, 509, 738 P.2d 841 (1987)). "The controlling question as to whether a binding contract has been entered into depends on the intention of the parties." *Id.* This requires a "factual inquiry." *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 815 P.2d 72, 80 (1991); *Morriss*, 738 P.2d at 848. The understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment com-

---

**4.** In *Stoldt*, the Kansas Supreme Court, relying upon *Leek v. Theis*, 217 Kan. 784, 539 P.2d 304 (1975), held that a city's night watchman did not have a property interest in his job under Kansas

law. However, the issue of whether the night watchman had an implied contract with the city was not raised or considered.

menced. *Morriss,* 738 P.2d at 848–49 (quoting *Allegri v. Providence–St. Margaret Health Center,* 9 Kan.App.2d 659, 684 P.2d 1031 (1984)). "A reasonable person must be able to find from all relevant circumstances of the plaintiff's employment that there was an intent on behalf of both sides to be bound." *Berry,* 838 F.Supp. at 1492.

An analysis of the Kansas law on implied contract would be incomplete without some review of *Brown v. United Methodist Homes for the Aged.* In *Brown,* the Kansas Supreme Court considered whether the trial court had properly denied defendant's motions for a directed verdict and for judgment notwithstanding the verdict after a jury determined that the defendant had breached an implied contract of employment by terminating the plaintiff. 815 P.2d at 83. The Court concluded that the evidence presented by the plaintiff at trial which consisted of the defendant's personnel manual and the testimony of the plaintiff's supervisor was sufficient to uphold the trial court's denial of the defendant's motions. *Id.* The personnel manual contained specific provisions for terminating an employee, but also contained two statements which stressed that employment with the defendant was "at will." *Id.* The testimony of the supervisor indicated that it was the defendant's philosophy "to be fair to the employees," and that two clerical mistakes had been made regarding the plaintiff's leaves of absence. *Id.* Although characterizing the evidence presented by the plaintiff as "not strong," the Kansas Supreme Court upheld the jury's verdict on the plaintiff's implied contract claim. *Id.*

The Tenth Circuit, in analyzing implied contract claims from Kansas, has suggested that under *Brown* "not much" evidence in addition to the policy manual is required to create an issue of fact. *Koopman v. Water Dist. No. 1 of Johnson,* 972 F.2d 1160, 1165 (10th Cir.1992). In a subsequent case, the Tenth Circuit concluded that *Brown* required a plaintiff claiming an implied contract for a definite duration to introduce a personnel manual or handbook plus some independent probative evidence

bearing on the issue of the defendant's intent in order to survive summary judgment. *Farthing v. City of Shawnee,* 39 F.3d 1131, 1139 (10th Cir.1994).

The rule to be drawn from the Kansas cases is that "an employee cannot create a jury question by reliance on only one factor, whether that be a statement in the policy manual or a statement from the employer." Worth and Landis, Fire at Will? The Status of Judicially Created Exceptions to Employment–at–Will in Kansas, 64 J.K.B.A. 22, 25 (1995). Beyond that, the court must examine the factors set forth in *Morriss* to determine if sufficient evidence of an implied contract is present.

903 F.Supp. at 1422–23.

The evidence supplied to the court is insufficient to show an implied contract here. The evidence before the court fails to affirmatively demonstrate that plaintiff could be removed only for "cause." Neither the ordinance passed by the City nor the rules and regulations contained in the employee handbook show that an employee can be removed only for cause. The rules and regulations do not explicitly grant tenure or guarantee continued employment absent cause for termination. They do not limit the broad discretion an employer has under Kansas law to terminate employees. While the handbook contains a list of "causes" for disciplinary action and/or dismissal of an employee, it makes clear that discipline, including termination, is not limited to those situations. These circumstances do not suggest a contractual right promising continued employment. *See Kastner v. Blue Cross and Blue Shield,* 21 Kan.App.2d 16, 894 P.2d 909, 917 (1995) ("Telling an employee about certain grounds for termination is not the same as telling an employee he or she will not be terminated absent those grounds."); *Copple v. City of Concordia,* 814 F.Supp. 1529, 1536 (D.Kan.1993) ("The court cannot imply a contractual right promising continued employment from a list of grounds for discipline and termination."); *Harris v. Board of Public Utilities of Kansas City,* 757 F.Supp. 1185, 1191 (D.Kan.1991) ("The [Personnel] Code does no more than provide some accepted

reasons for discipline and discharge. Without any language or structure in the code to limit the [defendant's] traditional, unfettered right to discipline and discharge employees as it see fit, the court find no support for an implied employment contract in the Personnel Code.").

Moreover, any reliance by the plaintiff upon the resolution that was passed by the City is also misplaced. First, this resolution was passed long after plaintiff became an employee and thus it was not bargained for by the plaintiff. Under Kansas law, a unilateral expression by the employer which is not bargained for cannot alone be the basis for an employment contract. *Kastner*, 894 P.2d at 917; *Copple*, 814 F.Supp. at 1536. Second, the action by the City in passing the resolution and codifying the personnel rules and regulations does not transform them into an employment contract since the rules and regulations themselves do not form an express or implied contract of employment. *Copple*, 814 F.Supp. at 1535. The resolution does not provide the plaintiff with any more rights than those which are found in the rules and regulations themselves.

Plaintiff has also suggested that the grievance procedure established by the City constitutes an implied contract of employment. We disagree. Grievance procedures granting an employee the right to a hearing by themselves "do not support a 'legitimate claim of entitlement' to future employment. . . . [S]uch a right attaches only when there are substantive restrictions on the employer's discretion." *Asbill v. Housing Authority of Choctaw Nation*, 726 F.2d 1499, 1502 (10th Cir.1984). Although the grievance procedures may entitle plaintiff to certain procedural protections, they do not create a property interest for due process purposes. *Id.; Polson v. Davis*, 635 F.Supp. 1130, 1141 (D.Kan.1986). *See also Carnes v. Parker*, 922 F.2d 1506, 1511 (10th Cir.1991) ("[P]rocedural protections themselves are not sufficient to create a property interest in continued employment. . . .").

Finally, the other factors raised by the plaintiff fail to suggest an implied contract. Plaintiff's length of employment is simply not a valid consideration absent a showing that plaintiff could only be terminated for cause. *Martin v. Unified School Dist. No. 434*, 728 F.2d 453, 455 (10th Cir. 1984) (evidence that principal had been reappointed for eleven consecutive years prior to nonrenewal does not establish legitimate expectation in continued employment). In addition, plaintiff's promotions and positive performance evaluations fail to provide support for an implied contract. *Kastner*, 894 P.2d at 918 (evaluation on a performance review "is not probative of whether an implied-in-fact contract of employment existed between the parties.").

In sum, the court finds insufficient evidence of an implied contract. The court concludes that plaintiff was an at-will employee and had no constitutionally protected property interest in continued employment with the City of Manhattan.

## V.

With the aforementioned determinations, the court need not consider the other arguments raised by the City. Accordingly, the City is entitled to summary judgment on all claims asserted by the plaintiff.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. # 43) be hereby granted. Judgment shall be entered for the defendant and against the plaintiff on all claims contained in the amended complaint.

**IT IS SO ORDERED.**