**Michael G. BROWN, Plaintiff,**

v.

**YOUTH CENTER AT TOPEKA, The State of Kansas Department of Social and Rehabilitation Services, Donna Whiteman, individually and in her capacity as Secretary of the Kansas Department of Social and Rehabilitation Services, Harold Allen, individually and in his capacity as Superintendent of the Youth Center at Topeka, David Hilderbrand, individually and in his capacity as Cottage Director at the Youth Center at Topeka, Larry Schmidt, individually and in his capacity as Youth Service Specialist III at Youth Center at Topeka, William VonHemel, individually and in his capacity as Youth Service Specialist II at the Youth Center at Topeka, Defendants.**

**No. 93–4219–DES.**

United States District Court,
D. Kansas.

April 25, 1995.

**574**

Nina W. Tarr, Washburn Law Clinic, Peggy Meiering, William Mott, Legal Intern, Topeka, KS, for plaintiff.

Matthew W. Boddington, Kansas Dept. of SRS, Topeka, KS, for defendants.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

## I. INTRODUCTION

This matter is before the court on defendants' motion for summary judgment.[1] Plaintiff brings this action under 42 U.S.C. § 1983 alleging defendants terminated his employment, in which he claims a constitutionally protected property interest, without due process of law. The court has reviewed the parties' factual submissions and legal memoranda, as well as the relevant law, and shall rule without oral argument. *See* District of Kansas Rule of Practice and Procedure 206(d).

## II. SUMMARY JUDGMENT STANDARDS

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). The substantive law identifies which issues are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

---

1. Defendants moved to dismiss November 22, 1993. Although the motion to dismiss does not appear on the court's computerized list of pending motions, the court finds no document disposing of it. The court notes, however, that defendants' motion for summary judgment raises arguments and relies on authority identical to those urged in their motion to dismiss. The court, therefore, considers defendants' motion to dismiss to have merged into their motion for summary judgment. *Abbott v. United Venture Capital, Inc.,* 718 F.Supp. 828, 831 (D.Nev.1989); *Zaky v. United States Veterans Admin.,* 605 F.Supp. 449, 452 (N.D.Ind.1984). *Cf. Miller v. Glanz,* 948 F.2d 1562, 1656–66 (10th Cir.1991); *Nichols v. United States,* 796 F.2d 361, 364 (10th Cir.1986).

■ The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the [nonmovant's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53.

■ Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1985). The nonmovant must go beyond the pleadings and, by affidavits or the depositions, answers to the interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Rule 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

■ A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

**III. *FACTUAL BACKGROUND***

For the purposes of defendants' motion for summary judgment, the following facts are either uncontroverted or construed in the light most favorable to plaintiff.[2]

In August of 1989, plaintiff began his employment with the Youth Center at Topeka ("YCAT") as a temporary Youth Services Specialist I. He was assigned to work the night shift—11:00 p.m. to 7:00 a.m.—at Arapaho Cottage. He became a permanent classified employee in October of 1989.

On December 23, 1991, he telephoned David Hilderbrand, his Cottage Director, at approximately 9:00 p.m. to request the evening off. Mr. Hilderbrand denied his request. Before reporting to work, plaintiff telephoned Mr. Hilderbrand two more times to request the evening off; however, Mr. Hilderbrand denied both requests. Plaintiff arrived for his shift at 10:50 p.m. At approximately 10:55 p.m., plaintiff encountered Mr. Hilderbrand as Mr. Hilderbrand was leaving YCAT. Plaintiff called Mr. Hilderbrand a "chicken shit" and a "son of a bitch" and

---

**2.** In his response to defendants' motion, plaintiff generally denies several of defendants' statements of undisputed fact; however, plaintiff submits no factual information in support. Defendants argue they are entitled to summary judgment because plaintiff failed to controvert specifically any of their factual contentions. In an effort to remedy his oversight, plaintiff submits "A Request To Submit Documentation," which includes his own affidavit as well as photocopies of portions of the Department of Social and Rehabilitation Services and Youth Center at Topeka's personnel manuals. Defendants submit the same portions of these personnel manuals in their factual memorandum in support. In his affidavit, plaintiff admits the incidents alleged and generally states he has "no information" with regard to several of defendants' contentions; in short, he manages to controvert only one of defendants' statements of uncontroverted fact: defendants' contention that plaintiff was presented with the proposed notice of termination February 11, 1992. Although plaintiff presents his "Request" in a cavalier manner, the court finds that granting plaintiff's "Request" will not change the outcome here. Thus, out of an abundance of caution, the court grants plaintiff's "Request" and considers his additional "documentation."

threatened he was going "to whip [Mr. Hilderbrand's] ass." William VonHemel, YCAT assistant night manager, witnessed the encounter. Later that evening, Mr. VonHemel spoke to plaintiff regarding his behavior earlier in the shift.

Three days later, on December 26, 1991, plaintiff arrived at approximately 10:45 p.m. to begin his shift. Upon entering the Cottage, he again encountered Mr. Hilderbrand and called him a "chicken shit" and a "fucking liar." As a result of plaintiff's outburst, several students awoke. Terry Baty, another YCAT staff member, witnessed the outburst and quieted the students.

On February 3, 1992, Larry Schmidt, YCAT night shift manager, observed plaintiff sleeping on the job. Mr. Schmidt reported the incident in his night shift report.

Mr. Hilderbrand prepared a written memorandum, which he submitted to Ivan Bradley, his supervisor, on January 9, 1992, describing the December 23 and 26 encounters with plaintiff. William VonHemel prepared a written memorandum, which he submitted to William Hepp, his supervisor, on January 14, 1992, describing the events of December 23. Terry Baty prepared a written memorandum, which he submitted to Richard Kline, his supervisor, on January 13, 1992, describing the events of December 26.

On January 11, 1992, plaintiff received a copy of the Hilderbrand memorandum. Plaintiff responded to Mr. Hilderbrand's allegations in a written memorandum which he submitted to Mr. Bradley January 13, 1992. On January 15, 1992, Mr. Bradley prepared a written memorandum in which he discussed the allegations against plaintiff. On February 7, 1992, plaintiff received copies of the memoranda prepared by Mr. Baty and Mr. Bradley. At some time soon thereafter, plaintiff received a copy of Mr. VonHemel's memorandum. After receiving the Baty, Bradley, and VonHemel memoranda, plaintiff prepared another written memorandum, which he submitted to Harold Allen, the Su-pervisor of YCAT, February 10, 1992, responding to the allegations.

On February 11, 1992, Mr. Allen placed plaintiff on administrative leave with pay pending the conclusion of an investigation into the allegations regarding plaintiff's conduct. Mr. Allen also prepared a notice of proposed termination from employment, addressed to plaintiff and dated February 11, 1992. The notice discussed the reasons for plaintiff's proposed termination (the two verbal altercations with Mr. Hilderbrand and the February 3 incident observed by Mr. Schmidt), explained that plaintiff's conduct violated SRS and YCAT policy and procedure, and announced that a pre-termination hearing had been set for February 13, 1992, at 8:00 a.m., at which plaintiff could "present [his] reasons or explanations why [his] dismissal should not take place." Plaintiff contends he did not receive the notice until the afternoon of February 13. He contends, instead, that Mr. Allen only orally informed him February 11 that a meeting would be held February 13. Plaintiff also contends Mr. Allen did not inform him of the purpose of the meeting.[3]

Plaintiff met with Mr. Allen at 8:00 a.m., February 13, 1992. Plaintiff also submitted a written memorandum, dated February 13, 1992, in which he again addressed the allegations against him; particularly the February 3, 1992, incident. Defendants' Memorandum in Support, Ex. 11. Mr. Allen prepared a letter, dated February 14, 1992, in which he informed plaintiff of his dismissal effective February 18, 1992. The letter also informed plaintiff of his right to appeal to the State Civil Service Board ("the Board") within 30 days.

Plaintiff perfected a timely appeal. On April 6, 1992, the Board heard plaintiff's appeal. Plaintiff appeared personally and by counsel, John Cassidy. Plaintiff testified on his own behalf and called six supporting witnesses. The State called Mr. Allen, Mr. Hilderbrand, Mr. VonHemel, Mr. Baty, and

---

**3.** In his Memorandum in Opposition, plaintiff writes as follows: "Michael Brown states that he did not receive a letter from Harry Allen on February 11, 1992, regarding his proposed termination. Instead, Michael Brown states that on February 11, Harry Allen simply told him to go home and 'think about what to say' and to come in on February 13 at 8:00 a.m." Plaintiff's Memorandum in Response, p. 10.

Mr. Schmidt, among others; plaintiff's counsel cross-examined each. The Board issued its Final Order affirming plaintiff's dismissal April 28, 1994. Plaintiff petitioned the Board for reconsideration. On June 3, 1992, the Board denied his petition. Plaintiff then petitioned the Shawnee County District Court for judicial review of the Board's decision. On April 6, 1993, the Shawnee County District Court issued a Memorandum Decision and Order affirming the Board. Plaintiff did not appeal; instead, he brought the instant action under 42 U.S.C. § 1983.

## IV. *DISCUSSION*

Plaintiff contends he was terminated in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. In his amended complaint, he alleges the following four counts: (1) defendants YCAT, SRS, Whiteman, Allen, Hilderbrand, and VonHemel failed to follow established policy and procedure with regard to the December 23, 1991, incident; (2) defendants YCAT, SRS, Whiteman, Allen, and Hilderbrand failed to follow established policy and procedure with regard to the December 26, 1991, incident; (3) defendants YCAT, SRS, Whiteman, Allen, and Schmidt failed to follow established policy and procedure with regard to the February 3, 1992, incident; and (4) defendants YCAT, SRS, Whiteman, and Allen failed to deliver personally or send by certified mail the February 11, 1992, letter informing plaintiff of his proposed dismissal. Thus, essentially, plaintiff's claim is composed of the following two arguments: (1) all defendants deprived him of property without due process by failing to follow various policies and procedures; and (2) certain defendants violated the Fourteenth Amendment by failing to deliver personally or send by certified mail the letter informing plaintiff of his proposed termination. Defendants move for summary judgment arguing as follows: (1) defendants' alleged failure to follow established policy and procedure does not constitute a violation of the Fourteenth Amendment; and (2) plaintiff received due process.

### A. *Failure to Follow Established Policy and Procedure*

■ Defendants' failure to follow established policy and procedure does not necessarily violate plaintiff's right to procedural due process. *Mangels v. Pena,* 789 F.2d 836, 838 (10th Cir.1986); *Atencio v. Board of Education of Penasco Ind. Sch. Dist.,* 658 F.2d 774, 779 (10th Cir.1981). It is important to remember that plaintiff brings this action under 42 U.S.C. § 1983 alleging treatment proscribed by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. Federal constitutional law, not the established policy and procedure of YCAT, the SRS, or the State of Kansas, provides the relevant standard; therefore, even if defendants violated established state policy and procedure, there is no constitutional deprivation unless their conduct also violated federal constitutional standards. *See, e.g., McDarby v. Dinkins,* 907 F.2d 1334, 1337 (2d Cir.1990); *Ramirez v. Ahn,* 843 F.2d 864, 867 (5th Cir.), *cert. denied,* 489 U.S. 1085, 109 S.Ct. 1545, 103 L.Ed.2d 849 (1989); *Bowens v. N.C. Dept. of Human Resources,* 710 F.2d 1015, 1019 (4th Cir.1983); *Atencio,* 658 F.2d at 779 & n. 10; *Bates v. Sponberg,* 547 F.2d 325, 329–30 (6th Cir.1976); *Hartwick v. Bd. of Tr. of Johnson Cty. Comm. Co.,* 782 F.Supp. 1507, 1511 (D.Kan.1992). *Cf. United States v. Caceres,* 440 U.S. 741, 751–52, 99 S.Ct. 1465, 1471–72, 59 L.Ed.2d 733 (1979).

Plaintiff contends defendants failed to counsel him about his misbehavior and to investigate or record promptly their accounts of his misbehavior. He further contends defendants' failure to counsel and investigate violated Sections 8–2, 8–2.1, 8–2.2, and 8–2.4 of SRS's Personnel Services Policy Manual and YCAT Procedure 02–031. He argues the violations infringed upon his right to due process. Defendants admit they did not strictly comply with applicable policy and procedure; however, they deny their deviations from standard practice violated plaintiff's right to due process.

Plaintiff bases his argument on *Accardi v. Shaugnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). *Accardi* was a habeas corpus action brought by a deportable alien attacking the validity of the Board of Immi-

gration's discretionary denial of his application to suspend deportation. The alien argued the Board of Immigration failed to follow regulations governing review of applications to suspend deportation. The Supreme Court agreed holding the Board was required to review Mr. Accardi's application in a manner consistent with its own regulations. Based on this holding, plaintiff argues defendants' failure to follow established policy and procedure amounts to a violation of the Fourteenth Amendment. The court disagrees.

The question presented here is whether defendants deprived plaintiff of his job without due process. *Accardi* does not address the process due an individual before he may be deprived of a constitutionally protected property interest. *See Bates*, 547 F.2d at 330 (noting that *Accardi* reversed an agency's action because the agency violated its own regulations not because the agency's action violated due process); *Brandywine Aff. NCCEA/DSEA v. Brandywine Bd. of Ed.*, 555 F.Supp. 852, 864 (D.Del.1983) (listing courts holding same). Nor does the court read *Accardi* to support a § 1983 action for deprivation of property without due process whenever a state actor's termination of an employee deviates from that agency, department, or unit's established policy and procedure. Assuming defendants failed to comply with the policies and procedures identified by plaintiff, such failure does not, ipso facto, violate the Fourteenth Amendment. Were the standard otherwise, the constitutional minimum would vary from state to state, and possibly even from agency to agency within a particular state, depending on the policy and procedure established by that state or state agency. *Rice v. Vigil*, 642 F.Supp. 212, 216 (D.N.M.1986), *aff'd*, 854 F.2d 1323 (10th Cir.1988).

In *Atencio v. Bd. of Ed. of Penasco Ind. Sch. Dist.*, a former superintendent was terminated after receiving notice of termination, a pre-termination hearing, and the opportunity for review as provided by New Mexico statutory law. He alleged his termination violated his right to procedural due process because prior to his termination he did not receive "conference procedures" required by New Mexico law. *Atencio*, 658 F.2d at 777.

According to New Mexico law, before the Board of Education could discharge an employee, the employee was entitled to two conferences with his immediate supervisor and an opportunity to correct his work. *Id.* The trial court concluded that failure to comply with the state procedure deprived the plaintiff of due process and awarded him damages and attorneys' fees. *Id.* at 778. The Tenth Circuit reversed writing that "the mere fact that a discharge may not be in accordance with state law does not necessarily mean that there has been a federal constitutional violation...." *Id.* at 779. Instead, there is no constitutional violation unless the employee is denied a fair forum for protecting his property interest. *Id.* at 779–80. "'[I]t is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions.'" *Id.* at 779 (quoting from, and adding emphasis to, *Bates*, 547 F.2d at 329–30). Because the hearings afforded the plaintiff by New Mexico law were sufficient under the Due Process Clause, the Tenth Circuit held he did not suffer a constitutional injury.

The court concludes, therefore, that defendants' failure to comply with established policy and procedure does not alone support plaintiff's claim under 42 U.S.C. § 1983. The court turns to examine the remaining question of whether the procedure granted plaintiff impinged upon his due process rights.

### B. *Due Process*

The parties agree plaintiff was a classified public employee who could be terminated only for cause; that is, he had a constitutionally protected property interest in his job. The parties also agree that to deprive him of this interest, the State had to afford him due process. They disagree as to whether the process he received was constitutionally adequate. Apart from plaintiff's general argument regarding defendants' compliance with "established policy and procedure," he specifically argues the process given him was unconstitutional because he received inadequate notice of the pretermination hearing.

In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84

L.Ed.2d 494 (1985), the Supreme Court discussed the process due a public employee who can be fired only for cause; specifically, the Court examined the process required pretermination. The Cleveland Board of Education ("Board") hired Mr. Loudermill, the respondent, as a security guard. *Loudermill*, 470 U.S. at 535, 105 S.Ct. at 1489–90. On his application, Mr. Loudermill incorrectly stated he never had been convicted of a felony. *Id.* The Board discovered the misstatement 11 months after his hire. *Id.* They sent him a letter November 3, 1980, informing him he had been dismissed because of dishonesty. *Id.* Mr. Loudermill was not given an opportunity to respond to the charge or challenge the dismissal. *Id.* On November 13, 1980, the Board adopted a formal resolution approving the discharge. *Id.* At the time, Ohio law granted a classified civil servant, such as Mr. Loudermill, the right to administrative review of his discharge. *Id.* Pursuant to this law, Mr. Loudermill appealed his termination to the Civil Service Commission; his discharge ultimately was affirmed. *Id.* at 535–36, 105 S.Ct. at 1489–90. Instead, of seeking judicial review of this decision, also a right granted him by Ohio law, Mr. Loudermill filed a complaint in federal court alleging the Ohio law was unconstitutional on its face because it did not provide an opportunity to respond prior to removal. *Id.* at 536, 105 S.Ct. at 1490. The district court dismissed his suit for failure to state a claim. *Id.* The Sixth Circuit Court of Appeals reversed-in-part and remanded. *Id.* at 537, 105 S.Ct. at 1490–91. The Supreme Court affirmed the Sixth Circuit because Mr. Loudermill alleged in his complaint he had no chance to respond prior to his termination. *Id.* at 548, 105 S.Ct. at 1496–97.

▮▮▮ *Loudermill* requires that a public employer give a tenured employee some form of hearing prior to termination; however, a full evidentiary hearing is unnecessary. *Id.* at 545, 105 S.Ct. at 1495. The pretermination hearing need neither be elaborate nor definitively resolve the propriety of the discharge. *Id.* at 545, 105 S.Ct. at 1495. Instead, "[i]t should be an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds

to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. at 1495. Therefore, prior to discharge, a tenured public employee need receive only "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. [Citation omitted]. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 546, 105 S.Ct. at 1495.

In *Powell v. Mikulecky*, 891 F.2d 1454 (10th Cir.1989), the Tenth Circuit further clarified the type of pretermination hearing required by the Fourteenth Amendment. Mr. Powell was a firefighter for the city of Bartlesville, Oklahoma. *Powell*, 891 F.2d at 1455. He was terminated during a meeting at which he admitted to unauthorized communications with officials from the fire departments of neighboring communities. *Id.* Prior to the meeting, the city had not informed Mr. Powell he was under investigation. Nor had it informed him of the purpose of the meeting: to determine whether he should be discharged. *Id.* at 1459. Mr. Powell brought an action under 42 U.S.C. § 1983 alleging he had been deprived of property without due process. *Id.* at 1456. The city moved for summary judgment arguing qualified immunity. *Id.* The district court refused to grant the city's motion. *Id.* The Tenth Circuit reversed.

Although Mr. Powell's failure to show that the defendants violated "clearly established" rights was the basis for the Tenth Circuit's reversal, the court finds instructive the panel's extensive analysis of Mr. Powell's due process rights under *Loudermill*. The Tenth Circuit summarized as follows:

> [t]he pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted. The pretermination hearing is intended to supplement, not duplicate, the more elaborate post-termination hearing. Because the post-termination hearing is where the

definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point. To duplicate those protections at the pretermination stage would cause unnecessary delay and expense while diffusing the responsibility for the ultimate decision to terminate an employee. The idea of conducting two identical hearings runs counter to traditional principles of adjudication.

*Id.* at 1459.

Plaintiff argues his termination violated his right to due process because defendants failed to comply with Kansas law and established policy and procedure. As previously noted, this argument has a general and a specific element: generally, plaintiff argues defendants violated his right to due process by failing to counsel him or notify him of any investigation; and specifically, he argues defendants violated his right to due process by failing to provide him with written notice of his pretermination hearing prior to February 13.

### 1. *Plaintiff's general argument*

In the instant case, plaintiff was discharged because of the following three incidents: (1) verbally attacking Mr. Hilderbrand December 23, 1991; (2) verbally attacking Mr. Hilderbrand December 26, 1991; and (3) sleeping on duty February 3, 1992. Several memoranda were prepared by YCAT staff and management regarding the incidents: (1) Mr. Hilderbrand's January 9, 1992, memorandum to Mr. Bradley regarding the December 23 and 26 incidents; (2) Mr. Baty's January 13, 1992, memorandum to Richard Kline regarding the December 26 incident; (3) Mr. VonHemel's January 14, 1992, memorandum to Mr. Hepp regarding the December 23 incident; and (4) Mr. Brad-

ley's January 15, 1992, memorandum. Plaintiff received copies of each of these memoranda. On January 13, 1992, plaintiff submitted a memorandum to Mr. Bradley, Mr. Hilderbrand's supervisor, in response to Mr. Hilderbrand's January 11 memorandum. On February 10, 1992, plaintiff submitted a memorandum to Mr. Allen, the Superintendent of YCAT, responding to the Baty, Bradley, and VonHemel memoranda. The following day, Mr. Allen orally informed plaintiff he was to attend a meeting February 13, 1992; however, plaintiff was not informed of the nature of the meeting but told only to go home and think about what he was going to say. The meeting was his pretermination hearing. At some time on February 13, 1992, either before or after the hearing, plaintiff prepared an additional memorandum, entitled "Rebutal [sic]," addressed to Mr. Allen, in which he once again responded to the charges. Defendants' Memorandum in Support, Ex. 11. Mr. Allen notified plaintiff of his dismissal in a letter dated February 14, 1992. Following his dismissal, plaintiff availed himself of the post-termination procedural protections provided by Kansas law;[4] specifically, he took the following actions: (1) he filed a timely appeal to the Kansas Civil Service Board; (2) on April 6, 1992, he received a full administrative hearing at which he was represented by counsel, had the opportunity to present evidence (plaintiff testified and called six supporting witnesses)[5], and had the opportunity to cross-examine the State's witnesses (such as, Mr. Allen, who conducted the pretermination hearing, Mr. Hilderbrand, who was involved in both December incidents, Mr. VonHemel, who witnessed one of the December incidents, Mr. Baty, who also witnessed one of the December incidents, Mr. Schmidt, who

4. The procedural framework is set forth in the Civil Service Act, the Administrative Procedure Act, and the Act for Judicial Review and Civil Enforcement of Agency Actions. *See* K.S.A. 75–2949(f) (providing for appeal by employee to Kansas Civil Service Board); K.S.A. 2929d(a) (providing that "[t]he state civil service board shall hear appeals taken to it pursuant to: (1) K.S.A...., 75–2949 ..."); K.S.A. 75–2929d(b) (providing that "[h]earings shall be conducted in accordance with the provisions of the Kansas administrative procedure act"); K.S.A. 77–501, et. seq. (the Administrative Procedure Act);

K.S.A. 75–2929h (stating that "the act for judicial review and civil enforcement of agency actions shall be applicable to appeals from orders of the civil service board"); K.S.A. 77–601, et. seq. (the Act for Judicial Review and Civil Enforcement of Agency Actions). *See also Morales v. Kansas State University,* 727 F.Supp. 1389, 1390–91 (D.Kan.1989) (describing the procedural framework in detail).

5. Defendants' Memorandum in Support, Tr. 1, Index and Tr. 2, Index.

reported the February 3 incident, and Ms. Sheri Standeford, who was with Mr. Schmidt on February 3)[6]; (3) following the Board's affirmance of his discharge, he petitioned for reconsideration of the Board's decision; and (4) following the Board's denial of his petition, he filed a petition with the Shawnee County District Court for judicial review of the administrative decision. He did not appeal the Shawnee County District Court's affirmance of the Board's decision, choosing instead to pursue the instant action in federal court.

 A tenured public employee is entitled pretermination to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. Prior to his termination, plaintiff received a hearing at which he was notified of the charges against him (notice which, arguably, he already received through the flurry of memoranda between plaintiff and YCAT)[7], told of the allegations against him (of these allegations the only possible surprise was the February 3 incident, which plaintiff discussed in his February 13, 1992, memorandum), and given an opportunity to respond to the allegations (again, he arguably already had responded to these allegations with his written responses to memoranda prepared by Mr. Hilderbrand, Mr. VonHemel, and Mr. Baty and submitted to him by YCAT prior to his discharge)[8]. The court finds that plaintiff received each of the pretermination elements required by *Loudermill;* additionally, he received extensive post-termination procedure, the adequacy of which he does not challenge. The Due Process Clause does not require that a tenured public employee be notified he is under investigation prior to his pretermin-

ation hearing nor does it require that he receive "progressive discipline" before he is terminated. *See Derstein v. State of Kansas,* 915 F.2d 1410, 1413 (10th Cir.1990) (holding that the fact plaintiff did not know of internal investigation in advance of pretermination hearing was "not significant"); *Powell,* 891 F.2d at 1458–63 (discharging plaintiff at a summary meeting, without giving plaintiff prior notice he was under investigation or of the nature of the meeting, did not violate due process); *Atencio,* 658 F.2d at 779–80 (denying plaintiff "conference procedures" did not impinge upon due process rights; particularly given the existence of adequate post-termination procedures). Given the nature of the pre- and post-termination procedure which plaintiff received, the court is persuaded that, as a matter of law, defendants' failure to follow established policy and procedure did not deny plaintiff a fair forum for protecting his state rights.

### 2. *Plaintiff's specific argument*

Plaintiff also argues as unconstitutional the manner in which he was notified of the hearing. Kansas law requires that a classified employee receive written notice of his proposed dismissal, the reasons and factual basis for the proposed dismissal, and the time, date, and place by, or at which, he may reply in writing or appear, or both.[9] Plaintiff received oral notice approximately one day before his hearing. *Loudermill* does not require that a plaintiff receive written notice of the charges against him; notice may be either oral or written. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. Furthermore, *Powell* suggests that a public employer may give notice orally at the same time it provides the employee with his opportunity to respond;[10]

---

6. *Id.*

7. *Cf. Seibert v. U. of Okl. Health Sciences,* 867 F.2d 591, 596–99 (10th Cir.1989) (holding plaintiff received constitutionally sufficient pretermination procedure where he was repeatedly warned by his employer about insubordination and given multiple opportunities to present his side of the story).

8. *Id.*

9. K.S.A. 75–2949(b).

10. Mr. Powell argued the defendants violated his right to due process by failing to provide him with notice that his meeting with the fire chief was, essentially, a pretermination hearing.

The Tenth Circuit rejected Mr. Powell's argument writing as follows:

[n]othing in *Loudermill* suggests, nor do we hold, that a public employee is entitled to some type of "pre-notification notice" of the charges against her or him. Likewise, *Loudermill* does not imply that, in conducting the pretermination hearing, there must be a delay between

indeed, at least one other judge within this district has applied *Powell* in this manner: *Copple v. City of Concordia*, 814 F.Supp. 1529, 1537–38 (D.Kan.1993) (Theis). *See also Daulton v. Board of County Commissioners of Anderson County*, 1994 WL 243753, *3 (D.Kan.) (Van Bebber).

In *Copple v. City of Concordia, Kan.*, a municipal employee was terminated for cause. *Copple*, 814 F.Supp. at 1534. On December 20, 1989, one day prior to his termination, the plaintiff attended a meeting with his supervisor. *Id.* at 1533. The purpose of the meeting was to discuss the supervisor's suspicion that the plaintiff had made numerous long distance calls using municipal telephones. Plaintiff was unaware of the purpose of the meeting. At the meeting, the supervisor informed the plaintiff he was suspected of making the calls. *Id.* Plaintiff denied the charges. *Id.* He was terminated the following day. *Id.* at 1534. He did not avail himself of the post-termination grievance procedures; instead, he brought 42 U.S.C. § 1983 an action in federal court alleging his termination violated the Due Process Clause of the Fourteenth Amendment. Judge Theis granted defendants' motion for summary judgment because, inter alia, plaintiff received adequate notice and opportunity to respond. *Id.* at 1537–38. Judge Theis held that the pretermination meeting satisfied *Loudermill* because plaintiff received oral notice of the charges against him, he was provided with the employer's evidence, and he was allowed to respond. *Id.* at 1538. Relying on *Powell*, Judge Theis specifically rejected plaintiff's argument that he was entitled to advance notice of the purpose of the meeting. *Id.* at 1538.

 In the instant case, plaintiff was told February 11 to attend a meeting with Mr. Allen on the morning of February 13. He was not told the purpose of the meeting, nor that he could bring witnesses. He argues the oral notice and the failure to inform him of the purpose of the meeting violated his rights under the Due Process Clause. The court agrees that the manner in which he received notice of the meeting violated Kan-

sas law and "established policy and procedure"; however, the court disagrees that it was unconstitutional. *See Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495 (stating that "[t]he tenured public employee is entitled to oral or written notice of the charges against him . . . ."); *Powell*, 891 F.2d at 1459 (noting that *Loudermill* does not imply there must be a delay between the "notice" and the "opportunity to respond"); *Copple*, 814 F.Supp. at 1538 (holding that "[d]ue process does not require that the employee be given advance notice of the purpose of the meeting"). *Cf. Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3rd Cir.1986) (holding no advance notice required), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987); *Brasslett v. Cota*, 761 F.2d 827, 836 (1st Cir.1985) (holding one hour face-to-face meeting, at which employee was notified of possibility of discharge and given chance to respond, sufficient). Therefore, because due process does not require that a plaintiff receive "pre-notification notice" of the charges against him, and because the court finds the procedure plaintiff received pretermination was sufficient to serve as an initial check against a mistaken decision, the court holds plaintiff's specific argument fails as a matter of law.

## V. CONCLUSION

When read in the light most favorable to plaintiff, the record reveals defendants did not adhere to the requirements of either Kansas law or established policy and procedure. However, prior to his termination, plaintiff received oral notice of the charges against him, an explanation of the employer's evidence, and an opportunity to respond; additionally, following his termination, he received more elaborate protections including, among other things, prompt review by the Kansas Civil Service Board at a hearing at which he was represented by counsel, able to present evidence, and able to cross-examine witnesses and judicial review of the Board's final order. Thus, the court is persuaded that, as a matter of law, the manner in which

the "notice" and the "opportunity to respond" accorded to the public employees.

*Id.*

defendants terminated plaintiff did not violate his right to due process.

**IT IS BY THE COURT THEREFORE ORDERED** that defendants' motion to dismiss (Doc. 13) is merged into their motion for summary judgment (Doc. 32).

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to submit documentation as plaintiff's reply to defendants' reply to plaintiff's response to defendants' motion for summary judgment (Doc. 38) is granted.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Doc. 32) is granted.