**Maria M. REYES–PAGAN, Plaintiff,**

v.

**Celeste BENITEZ, individually and in her official capacity as Ex–Secretary of the Department of Education of Puerto Rico; Carmen J. Martinez–Arroyo–De–Buxo, individually and in her official capacity as Director of the Central School for Visual Arts of the Department of Education; Maria T. Pastrana–Gonzalez, individually and in her official capacity as School Superintendent of District of San Juan I of the Department of Education; Lidia Hernandez–Matos, individually and in her official capacity as Investigator of the Com-**

plaints Division of the Department of Education of Puerto Rico; Jose Arsenio Torres, individually and in his official capacity as Secretary of the Department of Education of Puerto Rico, Defendants.

Civ. No. 93–1865CCC.

United States District Court, D. Puerto Rico.

Nov. 21, 1995.

Raúl Barrera–Morales, Santurce, PR, for plaintiff.

Pedro R. Pierluisi, Attorney General, Comm. of P.R., Dept. of Justice, Mayra Maldonado Colon, San Juan, PR, for defendants.

## OPINION AND ORDER

CEREZO, Chief Judge.

This is an action for damages, declaratory and injunctive relief under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, based on violations of the Fifth and Fourteenth Amendments of the United States Constitution; Section 1802 of the Civil Code, 31 L.P.R.A. § 5141; and Sections 1 and 16 of the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico. Before the Court is defendants' motion for summary judgment (**docket entry 19**), which was opposed (**docket entry 21**). Defendants' motion requests summary disposition founded on the following defenses: (1) that the claim is barred by the doctrine of res judicata; (2) that plaintiff has failed to establish a cognizable claim under § 1983; (3) that she has failed to meet the pleading requirements of a conspiracy claim under § 1985; (4) that defendants Celeste Benítez (Benítez), Carmen J. Martínez–Arroyo de Buxó (Martínez–Arroyo), María T. Pastrana–González (Pastrana), and Lydia Hernández–Matos (Hernández) are protected by the doctrine of qualified immunity; and (5) that the supplemental damages claim should be dismissed because of the likelihood of jury confusion since the required level of negligence under § 1983 is different from that required under the Civil Code.

### I. Summary Judgment Standard

Summary judgment is an appropriate remedy "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d

265 (1986). The Supreme Court has defined a "material fact" as one that "may affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. While the initial burden rests upon the moving party, once the moving party avers an absence of material facts that might support the claim of the party opposing the motion, the opponent must "establish the existence of a triable issue which is both genuine and material to his claim." *Fragoso v. López,* 991 F.2d 878, 886 (1st Cir.1993); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993). To survive summary judgment, the nonmoving party must not rest upon mere allegations, but must set forth specific facts that demonstrate that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. If the nonmoving party fails to bring proof of an essential element, all other facts are rendered immaterial and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 12 (1st Cir.1994).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmovant; all doubts and reasonable inferences must be resolved in the nonmovant's favor. *E.g. Casas Office Machines v. Mita Copystar America,* 42 F.3d 668, 684 (1st Cir.1994). Although in reviewing the evidence, "there is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails ...", *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir. 1987), "conclusory allegations, improbable inferences, and unsupported speculation" will not be credited. *E.g. O'Connor v. Steeves,* 994 F.2d 905 (1st Cir.1993). Mindful of these precepts, we examine the evidence in the light most favorable to Reyes.

## II. Facts

Reyes started working with the Department of Education on August 4, 1990. She was transferred from the Padre Rufo school to the Central School for Visual Arts (Central), where she taught biology to four groups and chemistry to another during the 1990–91 school year. Three of the biology groups had been assigned to another teacher—Ana Martínez—who had been given administrative duties due to her ailments. Sometime before the start of the 1991–92 school year, Martínez–Arroyo, the Director of the Central, notified the Department of Education that they would not be needing plaintiff's position for that year.

On August 5, 1991, Martínez–Arroyo summoned the school's faculty for an educational activity related to the organization of the 1991–1992 school year. On that day, Reyes was allegedly told by Martínez–Arroyo that she would teach biology in the tenth grade, and that she should request from Ana Martínez her daily work program. However, when Reyes requested it, Ana Martínez told her that she did not have it and that she should ask Martínez–Arroyo for it.

Unbeknownst to Reyes, Claudina Díaz, another teacher who had been previously assigned to the Living Beings course, had learned of Ana Martínez' request for retirement and had requested Martínez–Arroyo and Pastrana, the School Superintendent of the San Juan I District, to be assigned to teach biology in the tenth grade, a petition which had been granted.

On August 8, Reyes once more approached Martínez–Arroyo and asked for her work program. She was told by Central's Director that she was reassigned to teach the course of Living Beings to the seventh grade. At this point Reyes objected to her reassignment and demanded to be assigned to teach biology in the tenth grade.

There are conflicting versions concerning the manner in which Reyes objected her

reassignment. Defendants contend that Reyes engaged in disruptive behavior, preventing Claudina Díaz from teaching biology to the tenth grade through her continued presence in the classroom and, finally, prompting the latter to request reassignment. On the other hand, plaintiff asserts that she only claimed what was due and denies any wrongdoing.

Sometime thereafter, Martínez–Arroyo contacted Pastrana and allegedly told her that Reyes was unjustifiably refusing to accept her work program and requested that an investigation be initiated. Pastrana then visited the Department of Education's Legal Division which assigned the matter to Hernández, an investigator of the Office of Complaints.

On August 16, Reyes wrote to Pastrana requesting certified copies of her personnel file and a meeting to discuss her position as a science teacher at Central. In response to Reyes' letter, Pastrana stated that the matter had been referred to the legal division and that an investigator would interview her shortly. However, the interview was never held and, apparently, Hernández submitted her preliminary investigative report based on Pastrana's knowledge of the incidents at Central.

On August 20, Benítez—then Secretary of Education—relieved Reyes of her teaching duties, with pay, pending an investigation. As a basis for her decision, she cited Reyes' repeated refusals to accept her work assignment. Benítez concluded in her letter that, according to Section 1 of Law No. 115 of June 30, 1965, 18 L.P.R.A. §§ 274, et seq., which regulates the procedure for the cancellation of teaching certificates, Reyes had engaged in prevarication, insubordination and disorderly conduct. She furthermore apprised Reyes of her right to request an informal administrative hearing within ten (10) days after the letter's receipt.

Plaintiff requested an administrative hearing which took place on September 20 and 26, 1991. The purpose of the hearing was to preliminarily ascertain whether disciplinary action should be taken. Plaintiff was notified three days in advance of the hearing and requested a continuance which was denied.

In spite of her objections, the hearing addressed incidents of alleged misconduct by plaintiff other than the August 1991 incidents which prompted her suspension.

On October 8, the administrative officer that conducted the hearing issued a report recommending that disciplinary proceedings against Reyes be commenced. As a result, on January 24, 1992, Benítez issued a formal complaint and order which included episodes of conduct unrelated to the August 1991 incidents. Benítez ordered the suspension of plaintiff's teaching certificate and relieved Reyes of her duties, without pay, for an indefinite period of time. The complaint and order was later amended to provide for a period of suspension of three years.

On February 22, 1992, Reyes filed an appeal of the administrative decision before the Board of Appeals of the Public Education System (the Board). On March 24 of the following year, the Board issued a resolution concluding that the remedial action taken by the Department of Education was justified in light of Reyes' conduct. However, it should be noted that in its findings of fact, the Board exonerated Reyes from conduct unrelated to the August 1991 incidents. Plaintiff requested reconsideration of the Board's decision but it was not entertained.

Having exhausted her administrative remedies, Reyes then sought judicial review of the administrative agency's decision. On January 26, 1994, the Commonwealth of Puerto Rico's Superior Court, San Juan Part, issued an order affirming the Department of Education's decision. Reyes requested reconsideration of the order, resulting in a reduction of the sanction imposed by the Department of Education to a one year job suspension, without pay, and a concurrent one year suspension of her teaching certificate. Concerning the alleged due process violations raised by Reyes, the Court held that they did not occur since the Board had not taken into account the charges as to which she had not been given prior notice. The Court observed that if that evidence had any negative impact, it was later remedied by the appeal before the Board.

## III. Procedural Due Process

Plaintiff's due process claim is procedural in nature. She alleges, without challenging the constitutionality of the state administrative procedures in place, that defendants deviated from the procedure provided by the statutes and regulations governing the disciplinary process she was subjected to, which finally resulted in a one year job suspension without pay.

Reyes alleges that the Department's officials violated a host of applicable laws and regulations. She asserts that Martínez-Arroyo's decision not to use her during the 1991–92 year violated Department of Education's regulation 14–90–91 which governs transfers and reassignments. However, this alleged violation is moot since plaintiff still appeared in the list of teaching personnel for the 1991–92 year. She also contends that her assignment to the Living Beings course after having taught biology and chemistry in high school for a year violated Department of Education's Regulation 16–85–86 which provides that the assignment of courses must be the product of a joint effort of the teachers, administration, students and parents. Plaintiff correctly asserts that Law No. 115, 18 L.P.R.A. Section 274(a), permits the suspension of a teaching certificate while an investigation is under way for a period not exceeding ten (10) days. *Id.* However, in her August 20 letter suspending Reyes, with pay, Benítez did not specify a term for the suspension of Reyes' teaching certificate. Reyes also contends that the August 20 letter did not include a copy of the complaint specifying the charges that served as grounds for the action, as required by Section 2 of Law No. 115. *Id.* She recognizes that at that point there was no complaint since Benítez' letter constituted the formal filing of charges against plaintiff. Reyes was not notified of her disciplinary hearing with at least fifteen (15) days advance notice, as required by the Commonwealth's Uniform Administrative Procedures Act. 3 L.P.R.A. § 2159.

### A. The claims against codefendants Martínez–Arroyo, Pastrana, Hernández and José Arsenio Torres

██ Procedural due process guarantees that a state proceeding which results in a deprivation of property is fair, while substantive due process ensures that such action is not arbitrary and capricious. *Licari v. Ferruzzi,* 22 F.3d 344, 347 (1st Cir.1994). To state an actionable procedural due process claim under § 1983, plaintiff must (1) allege facts that support a determination that the plaintiff has a property interest, as defined by state law, and (2) that the conduct complained of, committed under color of state law, has deprived her of that property interest without constitutionally adequate procedure. *PFZ Properties v. Rodríguez,* 928 F.2d 28, 30 (1st Cir.1991).

██ The violations to established laws and regulations raised by plaintiff are of no consequence to the deprivation complained of here. To be actionable, an alleged due process violation must result in the deprivation of either a property or liberty interest. Plaintiff does not cite, nor have we found any authority supporting a finding that there is a property interest in teaching a specific course. Additionally, it is constitutionally permissible to suspend a public employee, with pay, when the employer perceives a significant hazard in keeping the employee on the job. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 544–45, 105 S.Ct. 1487, 1494–95, 84 L.Ed.2d 494 (1985); *Pierce v. Engle,* 726 F.Supp. 1231, 1237 (D.Kan. 1989) (A public employee's suspension, with pay, does not implicate due process concerns.).

██ The core of plaintiff's allegations are related to the disciplinary proceedings. Here federal constitutional law, not the Commonwealth's laws and regulations, provides the relevant standard. Accordingly, even if defendants violated established state procedures, there is no due process violation unless their conduct also violated federal constitutional standards. *E.g. McDarby v. Dinkins,* 907 F.2d 1334, 1337 (2d Cir.1990); *Brown v. Youth Center at Topeka,* 883 F.Supp. 572, 577 (D.Kan.1995).

The only allegations which we can construe as due process violations concern Reyes' lack of notice and opportunity to counter the addi-

tional charges. The due process violation occurred, if at all, when evidence was introduced over her objection at the administrative disciplinary hearing regarding other incidents that were not the subject of the proceedings and as to which she had not been given advance notice, charges which Reyes insists she did not have the opportunity to rebut. Benítez incurred in the alleged procedural violation when the charges of improper conduct that had been objected were included in the January 24, 1992 complaint and order which suspended Reyes without pay.

In light of our conclusion above, it is evident that the complaint fails to state a cause of action against codefendants Martínez–Arroyo, Pastrana and Hernández. Their conduct might have contravened state regulations, laws or policy. These departures, however, did not deprive plaintiff of any protected property interest. Accordingly, Reyes' due process claims against these codefendants lack merit. The complaint is also devoid of any allegations referring to codefendant José Arsenio Torres. Likewise, the complaint against him also fails to state a cause of action.

### B. The claims against codefendant Benítez

■ There is no dispute as to plaintiff's constitutionally protected property interest in maintaining her teaching license at the time of her suspension. *See Pierson Muller v. Feijoó*, 106 D.P.R. 838, 852 (1978). The issue remains whether Benítez' conduct resulted in a denial of rights secured by the Constitution or laws of the United States.

■ It has consistently been held that due process requires some kind of notice and some kind of hearing before the State deprives a person of liberty and property. *E.g. Cleveland Board of Education*, 470 U.S. at 542, 105 S.Ct. at 1493 (The root requirement of the Due Process clause is that an individual be afforded an opportunity for a hearing before he is deprived of any significant protected interest); *Goss v. López*, 419 U.S. 565, 579, 95 S.Ct. 729, 738–39, 42 L.Ed.2d 725 (1975) (At a minimum, due process requires some kind of notice and some kind of hearing before suspension of students from public school). The fundamental tenet of the constitutional requirement is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner. *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir.1990), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

■ It is settled that state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983. *Zinermon v. Burch*, 494 U.S. 113, 124, 110 S.Ct. 975, 982–83, 108 L.Ed.2d 100 (1990); *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). The general rule, however, does not apply to procedural due process violations, where the existence of state remedies is relevant in a special sense. *Zinermon*, 494 U.S. at 125, 110 S.Ct. at 983. In procedural due process cases, "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Id.* at 126, 110 S.Ct. at 983.[1]

---

1. This statement by the Supreme Court seems to implicate that procedural due process violations may be "cured" by the state through a later constitutionally correct procedure. As set forth in the factual statement, the Board, after a lengthy adversarial process in which both sides presented evidence and confronted each other, absolved Reyes of the charges which were unrelated to the August 1991 incidents. In this sense, all the perceived evils in the pretermination hearing would have been addressed and "cured." This view is espoused by the Eleventh Circuit Court of Appeals which in *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir.1994), *cert. denied* ——

U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), stated:

In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under § 1983 arise.

Our Circuit, however, in *Cotnoir v. University of Maine Systems*, 35 F.3d 6, 12–13 (1st Cir.1994), steered away from that view, stating:

Where an employee is fired in violation of his due process rights, the availability of post-termination grievance procedures will not or-

To determine whether a procedural due process violation has occurred, it is necessary to know what process the state provided, and whether it was constitutionally adequate. *Licari,* 22 F.3d at 347. This inquiry examines the procedural safeguards built into the statutory or administrative process, effecting the deprivation, provided by statute or tort law. *Id.* The Supreme Court established in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), that the adequacy is assessed by means of a balancing test that weighs the government's interest against the private interest affected, the risk of an erroneous deprivation, and the value of additional safeguards.

After performing the *Mathews* balancing test, the Supreme Court held that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Board of Education,* 470 U.S. at 546, 105 S.Ct. at 1495. Our Circuit has held that the notice requirement includes that of the proposed action based on those charges. *Cotnoir v. University of Maine Systems,* 35 F.3d 6, 11 (1st Cir.1994). The hearing need not be elaborate; it serves as an "initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Cleveland Board of Education,* 470 U.S. at 545–46, 105 S.Ct. at 1495. The pretermination hearing is intended to supplement the more elaborate post-termination hearing, where the definitive fact finding occurs. *Powell,* 891 F.2d at 1459.

In this case, Reyes was suspended with pay by Benítez on August 20, 1991. The letter Reyes received cited her repeated refusals to accept her work assignment as the basis for the administrative action. It further notified Reyes of her right to request an informal hearing within ten (10) days, which she did, and to show cause why she should not be suspended and her teaching certificates canceled. Reyes was notified of the informal hearing three days in advance. It took place on two dates, starting at 2:30 PM on September 20 and continuing on September 26, at 9:00 AM. The Department of Education's case in chief consisted of the presentation of 18 pieces of documentary evidence, without any discussion on their part on the contents of the documents. Reyes was represented by counsel and presented her case through her testimony—which the administrative officer characterized as an "intense interrogatory"—and various documents. The record shows that Reyes objected to the documentary evidence that dealt with incidents not related to Benítez' August 20 letter. No evidence was introduced which would tend to prove that Reyes had been investigated nor disciplined with regard to those incidents. Without making specific reference to any incident, the administrative officer's report found that Reyes had engaged in conduct that ran afoul of the provisions of the Department of Education's organic law and of Law No. 115, and recommended that disciplinary proceedings be commenced against her. Reyes' termination followed on January 24, 1992, when Benítez suspended her teaching certificate based on the August incidents and on the objected conduct.

We believe that the procedure that Reyes was afforded satisfied the constitutional minima as set forth in *Cleveland Board of Education.* She was apprised of the charges against her and of the possible consequences the administrative action could have. The record is not clear as to whether she was given a written or oral statement of the objected charges, but this is immaterial for *Cleveland Board of Education* does not require a specific form. *Cleveland Board of*

---

dinarily cure the violation. Thus even where a discharged employee receives a post-termination hearing to review adverse personnel action, the pretermination hearing still needs to be extensive enough to guard against mistaken decisions, and accordingly, the employee is entitled to notice, an explanation of the employer's evidence, and an opportunity to present his side of the story. If an employee is fired without these pre-termination protections, normally the constitutional deprivation is then complete. Thus, the post-termination grievance procedures which the individual defendants provided to Cotnoir could not compensate for a lack of pre-termination process afforded Cotnoir. (Citations omitted.)

*Education,* 470 U.S. at 546, 105 S.Ct. at 1495. She was represented by counsel and was able to explain her side of the story. The Constitution does not require more. To exact additional procedures "would intrude into an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*

Whether she was given *advance* notice of *all* the charges against her we think is in this case unimportant. A number of courts have held that notice and an opportunity to respond may be provided concurrently. *See McDaniels v. Flick,* 59 F.3d 446, 457 (3d Cir.1995) (the notice may be served at the time of the pretermination hearing); *Edmundson v. Borough of Kennett Square,* 4 F.3d 186, 193 (3d Cir.1993) (Id.); *Powell v. Mikulecky,* 891 F.2d 1454, 1459 (10th Cir. 1989) (stating that *Cleveland Board of Education* does not imply that there must be a delay between the notice and the opportunity to respond); *Riggins v. Board of Regents of the University of Nebraska,* 790 F.2d 707, 711 (8th Cir.1986); *Brown,* 883 F.Supp. at 581–82 (hearing notified orally one day in advance, notice of the purpose of the hearing and charges notified the same day did not violate due process); *Curry v. Pennsylvania Turnpike Commission,* 1994 WL 378116 (E.D.Pa.1994) (the employer may notify the employee of the charges against him at the time of the pretermination hearing). Moreover, the fact that the hearing took place on two separate dates, six days apart, gave her the opportunity to adequately prepare and present her case. Hence, to say that she was not given notice and was not able to rebut the evidence presented against her, in the face of such a hearing, is an overstatement.

Considering the evidence in the light most favorable to plaintiff we conclude that, as a matter of law, Reyes was afforded a constitutionally adequate procedure. The complaint fails to state a cause of action for procedural due process violation under § 1983. Given our holding, it follows logically that no cause of action exists for conspiracy to violate Reyes' constitutional rights under § 1985.

In view of the foregoing, defendants' motion for summary judgment is GRANTED (docket entry 19). Accordingly, all of plaintiff's due process claims are DISMISSED.

■ Plaintiff's procedural due process claim provided the sole basis of our jurisdiction. Since we have dismissed all the claims which provided this Court with original jurisdiction, we have discretion over whether to exercise supplemental jurisdiction to entertain Reyes' claims under the Commonwealth's constitution and for damages sounding in tort. *E.g. Mercado–García v. Ponce Federal Bank,* 979 F.2d 890, 896 (1st Cir. 1992); *Koelsch v. Town of Amesbury,* 851 F.Supp. 497, 502 (D.Mass.1994). We decline such an exercise. Accordingly, plaintiff's claims under the Puerto Rico Constitution and under the Civil Code of Puerto Rico are DISMISSED without prejudice.

Since no causes of action remain alive, this case is DISMISSED. Judgment SHALL be entered accordingly.

**SO ORDERED.**