**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 29 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TED BUCKLEY,

       Plaintiff-Appellant,

v.

KEEBLER COMPANY,

       Defendant-Appellee.

No. 97-3254
(D.C. No. 95-CV-2393-KHV)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BARRETT**, and **HENRY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  Therefore, appellant's request for oral argument is denied, and the case is ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Ted Buckley brought this action against defendant Keebler Company, alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 623(a), breach of implied contract, and negligence. In a bench ruling, the United States District Court for the District of Kansas entered summary judgment in favor of Keebler on each of these claims, and plaintiff appeals. In addition, plaintiff appeals the court's denial of his request for an award of attorney fees in connection with his motion to compel. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Background

The following facts were undisputed by the parties. Plaintiff was employed by Keebler as a sales representative from May 1986, until his termination on October 17, 1994. The employee handbook he received at the time he was hired contained no express language regarding Keebler's intent to discharge employees only for cause. This was the only handbook received by plaintiff during his tenure with Keebler. In 1990, Keebler had written employment policies in place which provided for certain procedures to be followed regarding notification of performance deficiencies and dismissals. Plaintiff admitted that he never received a copy of these employment policies and was unaware of their existence until after termination of his employment.

In a May 1994 performance evaluation, plaintiff was written up as unsatisfactory in reaching his sales goals and on the levels of his unsalable product. All of plaintiff's previous performance evaluations had been satisfactory or above. On July 20, 1994, plaintiff received a memo from Richard Murdock, Keebler district manager, addressing the problem of his unsalable product levels. In this memo, Mr. Murdock stated that "[i]t is critical that you understand the severity of this problem. If it were to happen again disciplinary action up to and including termination will be taken." Appellant's App. at 57. On October 14, 1994, Mr. Murdock met with plaintiff to discuss other deficiencies and problems with plaintiff's performance, including requests by two store owners that plaintiff not return to their stores. On October 17, 1994, plaintiff's employment with Keebler was terminated. He filed an EEOC complaint followed by this diversity action in federal court.

In his complaint, plaintiff asserted that (1) Keebler breached an implied contract of employment which allows for termination only for cause, (2) Keebler was negligent in failing to conduct an investigation of plaintiff's performance and in complying with its termination procedures, and (3) his termination was discriminatory based on his age in violation of the ADEA. On plaintiff's implied contract claim, the district court, relying on this court's cases applying Kansas law, concluded that the policies and procedures contained in Keebler's personnel

manuals and handbooks, without more, were insufficient to establish an implied contract. In addition, the court held that Kansas law did not recognize a negligence cause of action for an employer's failure to follow its internal notification and discharge procedures. Finally, the court held that plaintiff had failed to establish a prima facie case of age discrimination.

On appeal, plaintiff asserts that the district court improperly granted summary judgment to Keebler on his implied contract claim because a disputed issue of material fact existed. Second, he contends that, because Keebler created a duty which was breached resulting in damages to plaintiff, he stated a cognizable negligence claim. Finally, he asserts that the court abused its discretion in denying his request for attorney fees on his motion to compel.[1]

## II. Discussion

### A. Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standard as that used by the district court. See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.

---

[1] We note that plaintiff did not appeal the district court's grant of summary judgment on his ADEA claim. Absent argument on this issue, we deem it abandoned. See Farthing v. City of Shawnee, 39 F.3d 1131, 1134 n.3 (10th Cir. 1994).

1990).  Pursuant to Fed. R. Civ. P. 56(c), the moving party has the initial responsibility to show that "there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party meets this burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact regarding "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

## B.  Implied Contract Claim

Plaintiff alleges that his termination from his employment with Keebler was in breach of an implied contract of employment allowing termination only for cause.  Keebler argues that plaintiff failed to establish an intent on its part to abandon its at-will employment policy and create an implied contract, and asserts that plaintiff's evidence of the creation of an implied contract is insufficient to withstand summary judgment.

In this case, we apply Kansas law to determine whether plaintiff was entitled to continued employment under an implied contract.  See Carnes v. Parker, 922 F.2d 1506, 1510 (10th Cir. 1991).  Kansas embraces the common law doctrine of employment-at-will wherein employees are considered at-will in the absence of an express or implied contract.  See Johnson v. National Beef Packing Co., 551 P.2d 779, 781 (Kan. 1976).  We have interpreted Kansas law as standing

for the principle that the question of whether an implied contract exists normally is a question of fact for the jury. See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 537 (10th Cir. 1995); Morriss v. Coleman Co., 738 P.2d 841, 848 (Kan. 1987). Summary judgment, however, is not precluded where there is no showing of liability as a matter of law, where there are no essential facts in dispute, and where "'the plaintiff presents only evidence of his own unilateral expectations of continued employment.'" Kastner v. Blue Cross & Blue Shield of Kan., Inc., 894 P.2d 909, 916 (Kan. Ct. App. 1995) (quoting Conyers v. Safelite Glass Corp., 825 F. Supp. 974, 977 (D. Kan. 1993)); see, e.g., Pilcher v. Board of County Comm'rs. 787 P.2d 1204, 1207-08 (Kan. Ct. App. 1990) (upholding directed verdict where evidence was of insufficient quality to create disputed issue of material fact).

In Morriss, 738 P.2d 841, the court stated:

"Where it is alleged that an employment contract is one to be based upon the theory of 'implied in fact,' the understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced."

Id. at 848-49 (quoting Allegri v. Providence-St. Margaret Health Ctr., 684 P.2d 1031, 1033 (Kan. Ct. App. 1984)). Plaintiff points to the following factors in

-6-

support of his contention that an implied contract existed: (1) he wrote on his employment application that he left his former employment in order to pursue a career with Keebler; (2) when he was hired by Keebler he received an employee handbook outlining Keebler's policies regarding unsatisfactory performance; (3) Keebler has a written performance deficiency notification and dismissals policy which defined a discharge as involuntary termination for just cause; (4) representations of various of plaintiff's supervisors that plaintiff would not be terminated if his performance was satisfactory; and (5) satisfactory or better performance evaluations during the course of his employment.

In <u>Allegri</u>, the Kansas court recognized that "[a] contract implied in fact arises from facts and circumstances showing mutual *intent* to contract." 684 P.2d at 1035 (further quotation omitted). On July 19, 1991, after plaintiff had been employed by Keebler for five years, he signed a statement that provided:

> I have received a copy of the Employee Handbook, including Local Policies and Practices, and I have reviewed it, and understand and agree that any provision of the handbook or local policies and practices may be amended or revised, at any time, by Keebler Company. I also understand and agree that my employment is terminable at will so that both Keebler and I remain free to chose to end our work relationship; and, further, nothing in this handbook in any way creates an express or implied contract of employment between Keebler and me.

Appellant's App. at 56. Keebler asserts that this disclaimer is "strong evidence" that it did not intend to enter into an employment contract with plaintiff.

Appellee's Br. at 12.  Although Kansas courts have held that a disclaimer does not necessarily preclude the formation of an implied contract of employment, see, e.g., Morriss, 738 P.2d at 849 (holding that disclaimer in supervisor's manual does not, as a matter of law, decide the issue of an implied employment contract), we conclude that under the circumstances here, the disclaimer signed by plaintiff is dispositive of Keebler's intent.

In Morriss, the court determined that it had not been established that the disclaimer had ever been brought to the plaintiff's attention or that the disclaimer was intended to create an unqualified employment-at-will relationship.  See id. Distinguishing the facts in Morriss, the Kansas appellate court in Kastner held that where the plaintiff admitted reading a disclaimer contained in the employee handbook which stated that the policies in the handbook were not intended to create an implied contract of employment, the disclaimer was dispositive of the question of whether the employer intended to form a contract with the plaintiff. See 894 P.2d at 918-19.  Here, as in Kastner, there is no dispute that the disclaimer was brought to plaintiff's attention and the language of the disclaimer unequivocally establishes Keebler's intent to create an employment-at-will relationship.  See id. ("A more absolute declaration of intent on the part of [the employer] to create an unqualified employment-at-will relationship is difficult to envision.").

Plaintiff further argues that, despite the disclaimer, there was enough evidence to create a disputed issue of fact regarding whether Keebler intended to create an employment contract. We do not agree. First, plaintiff's notation of "career w/ Keebler" on his employment application as a reason for leaving his previous employer, Appellant's App. at 111, evinces only plaintiff's unilateral desire to pursue a career with Keebler, and cannot create a contractual obligation on Keebler's part to terminate plaintiff only for cause. True to plaintiff's assertions, the language in the employee handbook given to plaintiff at the time he was hired clearly sets forth certain reasons for termination and outlines procedures to be followed in handling performance deficiencies and dismissals. The manual does not, however, state any limits on the length of employment or definitively state that termination will only be for cause or only for those reasons stated. See Dehart v. City of Manhattan, 942 F. Supp. 1395, 1402 (D. Kan. 1996) (list of causes for disciplinary action or dismissal in handbook do not create a contractual right to continued employment); Kastner, 894 P.2d at 917 (informing employee of certain grounds for discharge "is not the same as telling an employee that he or she will not be terminated absent those grounds"). Here, the employee manual does not expressly state that termination will only be for cause. It is, therefore, merely an expression of Keebler's policy and, without more, cannot be interpreted as an intent to be bound by an employment contract. See Dehart, 942

F. Supp. at 1403 (employer's unilateral expression, not bargained for, cannot, without more, form the basis of an employment contract).

Plaintiff asserts that certain supervisors told him that as long as his performance was satisfactory, his employment with Keebler would be safe. In his affidavit submitted in opposition to Keebler's motion for summary judgment, plaintiff refers to the speakers only as "supervisors," offering no more specifics about the alleged statements. Appellant's App. at 94. Given Keebler's express disclaimer, these broad, unspecific statements are insufficient to raise a disputed issue of fact as to Keebler's intent to contract with plaintiff. See Pilcher, 787 P.2d at 1207-08 (plaintiff's testimony that employees believed they would not be terminated until after receiving three warnings, without further written documentation or identification of source of information, held insufficient to withstand summary judgment). Here, the alleged statements of plaintiff's supervisors do not constitute a promise that plaintiff will only be discharged for good cause, and, without more, cannot be considered probative of whether Keebler intended to abandon its employment-at-will relationship with plaintiff.

It is clear that pursuant to Kansas law, an employee manual which contains a general statement of company policy and was not bargained for by the parties nonetheless may be a relevant factor to be considered in determining whether an implied contract exists. See generally Brown v. United Methodist Homes for the

Aged, 815 P.2d 72, 82-83 (Kan. 1991).  Here, however, the provisions of the performance deficiency policy were not only not bargained for by the parties, but, in fact, plaintiff admitted that he had no knowledge of the policies until after he was terminated.  Clearly these policies cannot be considered probative of the existence of an implied contract of employment.

Plaintiff's reliance on his satisfactory performance evaluations is also misplaced.  As in Kastner, although plaintiff's evaluations suggest that he could be terminated for poor performance, nothing suggests a contract allowing for termination only if good cause exists.  See 894 P.2d at 918.

In order to withstand a motion for summary judgment, the opposing party must provide some evidence establishing the existence of a disputed material fact.  See Kastner, 894 P.2d at 916.  "To have evidentiary value, the particular document or testimony relied upon by the party opposing summary judgment must be probative of that parties' [sic] position on a material issue of fact.  Probative evidence . . . is that which furnishes, establishes or contributes toward proof."  Id. at 916-17 (further quotation omitted).  Here, plaintiff provided nothing other than his own expectations of continued employment with Keebler.  This does not give rise to an implied employment contract.  See Harris v. Board of Pub. Utilities, 757 F. Supp. 1185, 1190 (D. Kan. 1991).  Accordingly, absent the required disputed issue of material fact, the district court correctly held that Keebler was entitled to

summary judgment on the issue of the existence of an implied employment contract.

## C. Negligence Claim

Plaintiff continues to argue on appeal that Keebler's failure to investigate his performance deficiencies and follow its own pretermination procedures was a breach of duty giving rise to liability for negligence. The district court granted summary judgment to Keebler on this claim, opining that no cause of action for negligence in this context existed in Kansas law. We also are unaware of any case in which the Kansas courts have recognized such a cause of action. In Prost v. F.W. Woolworth Co., 647 F. Supp. 946, 947 (D. Kan. 1985), although the plaintiff conceded that, under Kansas law, an employer is under no legal duty to inform an at-will employee of performance deficiencies before termination, she argued that "once the employer undertakes to perform evaluations, he must do so in a non-negligent manner." Holding this argument to be contrary to Kansas' employment-at-will doctrine, the court held that rights of this nature only arise from the breach of a contract existing between the parties. See id. Here, there was no contract, hence no duty, and plaintiff's negligence claim fails.

## D. Attorney Fees

Lastly, plaintiff asserts that the district court erred in denying his request for an award of attorney fees in connection with his motion to compel. "We give

deference to a district court's decision regarding attorneys' fees. We only overturn these decisions where the district court abuses its discretion." O'Connor v. R.F. Lafferty & Co., 965 F.2d 893, 903 (10th Cir. 1992).

Prior to the hearing in this case, plaintiff filed a motion to compel, seeking Keebler's compliance with certain of plaintiff's discovery requests. The district court denied the motion as untimely. Renewing his motion at the hearing, plaintiff's counsel claimed that, if he was provided with the discovery requested, he would be able to provide an evidentiary record in support of plaintiff's age discrimination claim. The district court again denied plaintiff's request, opining that pursuant to the court's pretrial scheduling order, the request was untimely, and plaintiff had failed to show good cause as to why he had not timely filed the motion.

In his motion to alter, amend, or set aside judgment, plaintiff again argued his need for the unsupplied discovery. The district court entered an initial order, requiring Keebler to comply with plaintiff's discovery requests and requiring plaintiff to file a supplemental brief setting forth his arguments as to why, based on the additional discovery, the court should reconsider its summary judgment decision. Following review of plaintiff's supplemental brief, the court entered a second order denying plaintiff's motion by adoption of "the points articulated in Defendant's Suggestions In Opposition To Plaintiff's Motion To Alter, Amend,

Or Set Aside Judgment." Appellant's App. at 335. Because the court found that, even with the requested discovery, plaintiff had failed to provide any new evidence in support of its challenge to the court's summary judgment decision, the court concluded that sanctions in the form of an award of attorney fees "would hardly seem appropriate." Id. at 336. We discern no abuse of discretion in this decision.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.

Entered for the Court

John C. Porfilio
Circuit Judge